**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CION ADONIS PERALTA, *Plaintiff-Appellant*, v. T. C. DILLARD, Chief Dental Officer; S. BROOKS, D.D.S. Staff Dentist; J. FITTER, Chief Medical Officer, *Defendants-Appellees*. | No. 09-55907 D.C. No. 2:05-cv-01937-JVS-PLA OPINION |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted En Banc
September 18, 2013—San Francisco, California

Filed March 6, 2014

Before: Alex Kozinski, Chief Judge, Barry G. Silverman,
Susan P. Graber, Richard C. Tallman, Johnnie B.
Rawlinson, Richard R. Clifton, Jay S. Bybee, Milan D.
Smith, Jr., Morgan Christen, Jacqueline H. Nguyen and
Andrew D. Hurwitz, Circuit Judges.

Opinion by Chief Judge Kozinski;
Partial Concurrence and Partial Dissent by Judge Christen;
Partial Concurrence and Partial Dissent by Judge Hurwitz

# SUMMARY[*]

## Prisoner Civil Rights

The en banc court affirmed the district court's judgment following a jury verdict in favor of a prison dentist and affirmed the district court's judgment as a matter of law in favor of prison administrators in a 42 U.S.C. § 1983 action alleging deliberate indifference to medical needs in connection with a prisoner's dental care.

The court held that a prison official sued for money damages under § 1983 may raise a lack of available resources as a defense. The court held that the district court's challenged jury instruction in this case properly advised the jury to consider the resources that the prison dentist had available when determining if he was deliberately indifferent. The court held that to the extent the court's prior decisions in *Jones v. Johnson*, 781 F.2d 769 (9th Cir. 1986), and *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012), could be read to apply to monetary damages against an official who lacks authority over budgeting decisions, they were overruled.

The court held that the jury had sufficient evidence on which to base a finding that a lack of resources caused any delay in providing care. The court further held that the district court did not err by granting judgment as a matter of law in favor of Dr. Fitter, the prison's Chief Medical Officer and Dr. Dillard, the Chief Dental Officer.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The court held that the district court's prior decision refusing to grant Fitter and Dillard summary judgment did not, under law of the case, preclude the district court from reconsidering its pretrial ruling.

Dissenting in part and concurring in part, Judge Christen, joined by Judges Rawlinson, M. Smith, and Hurwitz and Judge Bybee as to parts I, II, and III, stated that the decision overturned more than thirty years of circuit precedent by holding that lack of resources is a defense to providing constitutionally inadequate care for prisoners. She joined the majority in affirming the dismissal of plaintiff's claims against Dr. Fitter, but she disagreed with the majority's conclusion that a directed verdict was appropriate on plaintiff's claims against Dr. Dillard.

Dissenting in part and concurring in part, Judge Hurwitz, joined by Judges Rawlinson, M. Smith and Christen, and Judge Bybee as to parts I and II, stated that the majority effectively held that a state can first choose to underfund the medical treatment of its wards, and then excuse the Eighth Amendment violations caused by the underfunding. Judge Hurwitz stated that as to Dr. Fitter, the majority correctly held that he was entitled to qualified immunity as he had relied on his staff's medical judgment.

## COUNSEL

Derek Milosavljevic (argued), Kirkland & Ellis LLP, Los Angeles, California, for Plaintiff-Appellant.

Janine K. Jeffery (argued) and Oren Rosenthal, Reily & Jeffery, Northridge, California, for Defendants-Appellees.

Melinda Bird and Monisha Coelho, Disability Rights California, Los Angeles, California; Donald Specter and Kelly Knapp, Prison Law Office, Berkeley, California; Ernest Galvan and Lisa Ells, Rosen Bien Galvan & Grunfeld, LLP, San Francisco, California; Paula D. Pearlman and Michelle Uzeta, Disability Rights Legal Center, Los Angeles, California, for Amicus Curiae Disability Rights California, Disability Rights Legal Center, Prison Law Office, and Rosen Bien Galvan & Grunfeld, LLP.

---

## OPINION

Chief Judge KOZINSKI delivered the opinion of the court, which is joined in full by Judges SILVERMAN, GRABER, TALLMAN, CLIFTON and NGUYEN. Judge BYBEE joins Part II.B.

KOZINSKI, Chief Judge:

We consider whether prison officials sued for money damages under 42 U.S.C. § 1983 may raise a lack of available resources as a defense.

## I. Background

At the time Cion Adonis Peralta arrived at California State Prison, Los Angeles County (Lancaster), the prison had only three or four dentists and three or four dental assistants. It had no office technicians or dental hygienists. State policy calls for one dentist for every 950 prisoners, but the ratio at Lancaster was closer to one to 1,500. In addition, the dentists there were responsible for roughly 1,800 inmates at other facilities, bringing the ratio to around one to 2,000.

Peralta requested dental care almost immediately. He complained that his teeth hurt, he had cavities and his gums were bleeding. When he hadn't received care a few weeks after his initial request, Peralta filed a written appeal, in which he again claimed that he had cavities and severe pain. In the informal response to that appeal, Peralta was put on a waiting list, which was generally nine to twelve months long.

Peralta then pursued a formal appeal. He was subsequently interviewed by Dr. Brooks, a staff dentist. Brooks asked Peralta which tooth hurt most, took X-rays and scheduled Peralta for an extraction of that tooth. Brooks also gave Peralta a few days' supply of Ibuprofen. Dissatisfied, Peralta filed a second-level appeal a few days later, and was told that "further treatment [would] be provided based on the waiting list."

About three months after his initial interview, Peralta had his second visit with Brooks. During that visit, Peralta was supposed to have the scheduled extraction, but he declined to go through with it after Brooks told him removal was unnecessary. Brooks gave Peralta more Ibuprofen and medication for an infection. Eleven months after that, Brooks saw Peralta again and took X-rays, reviewed Peralta's history and cleaned his teeth.

After Peralta declined to have his tooth extracted, but before his cleaning, he filed this section 1983 lawsuit for money damages against Brooks; the prison's Chief Dental Officer, Dr. Dillard; and the Chief Medical Officer, Dr. Fitter. He claimed that their deliberate indifference to his serious medical needs violated his Eighth Amendment rights. *See* 42 U.S.C. § 1983. In the end, his claims amounted to a several-month delay in getting his teeth cleaned and an

alleged failure to treat his pain. These claims went to trial, but after Peralta presented his case, the district court granted directed verdicts to Dillard and Fitter. The jury found for Brooks. Peralta challenges the jury instruction, as well as the judgment in favor of Dillard and Fitter.

## II. Discussion

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle* v. *Gamble*, 429 U.S. 97, 104 (1976). A medical need is serious if failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain.'" *Jett* v. *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin* v. *Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc.* v. *Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). A prison official is deliberately indifferent to that need if he "knows of and disregards an excessive risk to inmate health." *Farmer* v. *Brennan*, 511 U.S. 825, 837 (1994).

### A.  "Cost Defense" Jury Instruction

The court instructed the jury that "[w]hether a dentist or doctor met his duties to Plaintiff Peralta under the Eighth Amendment must be considered in the context of the personnel, financial, and other resources available to him or her or which he or she could reasonably obtain." The court also told the jury that "[a] doctor or dentist is not responsible for services which he or she could not render or cause to be rendered because the necessary personnel, financial, and other resources were not available . . . or which he or she could not reasonably obtain."

We review a district court's formulation of civil jury instructions for abuse of discretion, *Dang* v. *Cross*, 422 F.3d 800, 804 (9th Cir. 2005), but we review de novo whether an instruction states the law correctly, *Clem* v. *Lomeli*, 566 F.3d 1177, 1180–81 (9th Cir. 2009). Jury instructions must be supported by the evidence, fairly and adequately cover the issues presented, correctly state the law, and not be misleading. *Id.* at 1181.

### 1.  The Instruction's Statement of the Law

The Supreme Court has not said whether juries and judges may consider a lack of resources as a defense in section 1983 actions. *See Wilson* v. *Seiter*, 501 U.S. 294, 302 (1991) ("[T]he validity of a 'cost' defense as negating the requisite intent is not at issue in this case . . . ."); *see also Harris* v. *Angelina Cnty.*, 31 F.3d 331, 336 (5th Cir. 1994). But the Court *has* told us that prison officials aren't deliberately indifferent to a prisoner's medical needs unless they act wantonly, *see Estelle*, 429 U.S. at 104, and whether an official's conduct "can be characterized as 'wanton' depends upon the constraints facing [him]," *Wilson*, 501 U.S. at 303. The Court has also told us that, even if an official knows of a substantial risk, he's not liable "if [he] responded reasonably." *Farmer*, 511 U.S. at 844.

What is reasonable depends on the circumstances, which normally constrain what actions a state official can take. This case is a fine example. Peralta rests his claim on having to wait for dental care, but prisons are a particularly difficult place to provide such care. Security concerns dictate that only one prisoner be in the examination room at a time, even if there's more than one chair, and that no prisoner be left alone, lest he try to use dental tools as weapons. Further

exacerbating the problem, only emergency cases can be seen when the prison is in lockdown, and dentists can't accept prisoners' complaints at face value, as inmates often try to jump the line by exaggerating their symptoms.

These challenges aside, there simply weren't enough dentists at Lancaster to provide every prisoner with dental care on demand. The ratio of dentists to prisoners was less than half what the state said it should be, there were no office technicians or dental hygienists and, on many occasions, Brooks had no dental assistant. Peralta doesn't argue that Brooks was responsible for these constraints. Nor could he, since Brooks had no control over the budget.

Peralta would have had the jury ignore that there was no money or staff available to treat him immediately, and hold Brooks personally liable for failing to give Peralta care that Brooks would have found impossible to provide. Peralta claims that this approach is compelled by our decisions in *Jones* v. *Johnson*, 781 F.2d 769 (9th Cir. 1986), and *Snow* v. *McDaniel*, 681 F.3d 978 (9th Cir. 2012). In *Jones*, we reversed a district court's dismissal of a pretrial detainee's deliberate indifference claims because we found "no other explanation in the record than the budget concerns" for denying treatment, and "[b]udgetary constraints . . . do not justify cruel and unusual punishment." 781 F.2d at 771. In *Snow*, we reversed a district court's grant of summary judgment in favor of prison officials who delayed an inmate's surgery, partially due to a lack of resources, because the desire to avoid paying for a surgery is an "improper motive[]" for delaying it. 681 F.3d at 987.

As an en banc court, we're not bound by either decision. Even if we were, it wouldn't help Peralta. In *Jones* and

*Snow*, plaintiffs sought both money damages and injunctions. Neither case dealt with jury instructions; the question in both was whether the case could proceed at all.

Lack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations. *See LaMarca* v. *Turner*, 995 F.2d 1526, 1536–39, 1542 (11th Cir. 1993) (prison official wouldn't be personally liable if he did everything he could, but prisoner *could* get an injunction against official in his official capacity); *see also Watson* v. *City of Memphis*, 373 U.S. 526, 537 (1963) (rejecting argument that city couldn't desegregate parks because of budgetary concerns); *Wright* v. *Rushen*, 642 F.2d 1129, 1134 (9th Cir. 1981) ("[C]osts cannot be permitted to stand in the way of eliminating conditions below Eighth Amendment standards."). A case seeking prospective relief thus can't be dismissed simply because there is a shortage of resources.

Damages are, by contrast, entirely retrospective. They provide redress for something officials could have done but did not. What resources were available is highly relevant because they define the spectrum of choices that officials had at their disposal. To the extent *Jones* and *Snow* can be read to apply to monetary damages against an official who lacks authority over budgeting decisions, they are overruled. Judge Christen claims we are also overruling *Spain* v. *Procunier*, 600 F.2d 189 (9th Cir. 1979), but this is plainly not so. *Spain* involved *only* injunctive relief; it has nothing to say about damages, much less jury instructions. *See id.* at 192.

Peralta seeks only damages. Allowing the jury to consider the constraints under which an individual doctor

operates in determining whether he is liable for money damages because he was deliberately indifferent doesn't mean that prisoners have no remedy for violations of their Eighth Amendment rights. For example, although prisoners can't sue states for monetary relief, they *can* sue for injunctions to correct unconstitutional prison conditions. *See Will* v. *Mich. Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989); *see also Brown* v. *Plata*, 131 S. Ct. 1910 (2011).

Section 1983 also authorizes prisoners to sue municipal entities for damages if the enforcement of a municipal policy or practice, or the decision of a final municipal policymaker, caused the Eighth Amendment violation. *See City of St. Louis* v. *Praprotnik*, 485 U.S. 112, 138 (1988); *Pembaur* v. *City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 663 & n.7, 685–86 (1978). A chronic shortage of resources may well amount to a policy or practice for which monetary relief may be available under *Monell*, but *Monell* claims can't be brought against states, which are protected by the Eleventh Amendment. *See, e.g.*, *Quern* v. *Jordan*, 440 U.S. 332, 345 (1979). The prison where Peralta was held was, of course, run by the state.

Our dissenting colleagues would have the jury hold Brooks liable for delay in treatment caused by shortages beyond his control, on the theory that the state will wind up paying any damages award. According to the dissenters, this will give the state an incentive to improve prison conditions. Christen Dissent 28–30; Hurwitz Dissent 43–45. But the state is protected from monetary damages by the Eleventh Amendment. We may not circumvent this protection by imputing the state's wrongdoing to an employee who himself has committed no wrong. The dissenters attempt an end run around the Eleventh Amendment by subjecting the state to

precisely the kind of economic pressure against which the amendment protects it.

We have no quarrel with the dissenters' view that Peralta may have suffered an Eighth Amendment violation. If the state provided insufficient resources to accord inmates adequate medical care, it could be compelled to correct those conditions. *See Plata*, 131 S. Ct. 1910; *Spain*, 600 F.2d 189. But such a lawsuit could provide no redress for past constitutional violations because the state is protected by sovereign immunity, "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." *Alden* v. *Maine*, 527 U.S. 706, 713 (1999). Congress could abrogate this immunity, but it has not done so for cases brought under 42 U.S.C. § 1983. *See Quern*, 440 U.S. at 345. We decline to bring about by indirection what Congress has chosen not to do expressly.

An "intent requirement is either implicit in the word 'punishment' or is not; it cannot be alternately required and ignored as policy considerations might dictate." *Wilson*, 501 U.S. at 301–02. The Supreme Court has told us that it is. A prison medical official who fails to provide needed treatment because he lacks the necessary resources can hardly be said to have intended to punish the inmate. The challenged instruction properly advised the jury to consider the resources Brooks had available in determining whether he was deliberately indifferent.

### 2.  The Evidence Supporting the Jury Instruction

Peralta also argues that the jury instruction shouldn't have been given, even if it was correct, because there was no

evidence that budgetary constraints actually affected his treatment.  Even if Peralta's argument had merit, we would reject it because he invited the error.  *See United States* v. *Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc).  Peralta himself first suggested that the evidence introduced at trial supported an instruction about budgetary constraints.  He proposed an instruction that stated, as did the final instruction, that "[e]vidence has been presented during the trial regarding dental staffing levels and the availability of resources at the Lancaster correctional facility where Plaintiff Peralta was incarcerated during the time of his alleged injuries," but his instruction would have required the jury *not* to consider it.  Peralta's proposed instruction presupposed that there *was* sufficient evidence about the lack of resources at Brooks's disposal.  He can't now turn around and challenge the instruction containing some of the very text he proposed, on the new theory that it's unsupported by the evidence.

In any event, there's plenty of evidence to support a finding that a lack of resources prevented Brooks from cleaning Peralta's teeth sooner.  For example, in the Inmate Appeal Response, Brooks listed "staffing shortages beyond our control" as an explanation for the "waiting list for dental procedures."  There was also evidence that the prison had less than half the number of dentists required by law, there were no dental hygienists and dentists frequently had to work without dental assistants.

Peralta argues that there's no proof connecting the staff shortages to his lack of care.  But Brooks testified that he focused on a prisoner's most pressing complaint because he didn't have enough time, and Fitter testified that staff shortages limited the amount of time Brooks could have spent

with Peralta during any visit. Peralta argues that Brooks could at least have put him on the emergency list, but the decision whether to put an inmate on the emergency list calls for a balancing of the inmate's needs against the available resources and the needs of other patients. Because resources were limited, putting Peralta on the emergency list would have delayed another prisoner's treatment. It was up to the jury to decide whether Brooks was deliberately indifferent by failing to put Peralta on the emergency list, given "the personnel, financial, and other resources available to him . . . or which he . . . could reasonably obtain."

Peralta also argues that Brooks *had* the resources to prescribe him additional (or different) pain medication. But Brooks did prescribe Ibuprofen, and Peralta testified that it helped alleviate his pain. There's no evidence that Peralta requested further medication, although other inmates did so routinely, until months later when he next met with Brooks. During this second visit, Brooks gave Peralta more Ibuprofen and medicine to treat an infection. Brooks testified that he didn't see any signs of an infection during Peralta's first visit. The jury had sufficient evidence on which to base a finding that a lack of resources caused any delay in providing dental care. It would have been surprising if the jury had concluded otherwise.

## B. Judgment as a Matter of Law

Peralta also challenges the district court's decision to grant Fitter, the Chief Medical Officer, and Dillard, the Chief Dental Officer, judgment as a matter of law. *See* Fed. R. Civ. P. 50(a). Judgment as a matter of law is warranted "'when the evidence presented at trial permits only one reasonable conclusion.'" *Torres* v. *City of Los Angeles*, 548 F.3d 1197,

1205 (9th Cir. 2008) (quoting *Santos* v. *Gates*, 287 F.3d 846, 851 (9th Cir. 2002)). We review de novo the district court's decision to grant judgment as a matter of law, drawing all reasonable inferences in favor of Peralta. *Id.* at 1205–06.

Supervisors aren't vicariously liable for constitutional violations under section 1983. *Hunt* v. *Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). But they can be liable for their own conduct. *Redman* v. *Cnty. of San Diego*, 942 F.2d 1435, 1445–46 (9th Cir. 1991) (en banc), *abrogated on other grounds by Farmer*, 511 U.S. 825. Consequently, a prison administrator can be liable for deliberate indifference to a prisoner's medical needs if he "knowingly fail[s] to respond to an inmate's requests for help." *Jett*, 439 F.3d at 1098.

## 1.  Serious medical need

A medical need is serious if "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 1096 (internal quotation marks omitted). Peralta's claim arises primarily out of the delay in cleaning his teeth. The mere failure to provide a routine tooth cleaning doesn't create a serious medical need. *Hallett* v. *Morgan*, 296 F.3d 732, 745–46 (9th Cir. 2002). The Eighth Amendment "'requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable.'" *Id.* at 745 (quoting *Hoptowit* v. *Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)).

But Peralta alleges that he was denied more than a routine cleaning. He alleges that he had severe pain, infected teeth, cavities and bleeding gums, and that a cleaning was necessary to treat those medical conditions. We've held that the

"existence of chronic and substantial pain" indicates that a prisoner's medical needs are serious, *McGuckin*, 974 F.2d at 1060, and recognized that a delay as short as three months in receiving necessary dental care can create a genuine issue of material fact, *Hunt*, 865 F.2d at 200–01. Defendants haven't challenged these precedents, nor disputed before us that Peralta has adequately alleged a serious medical need. We thus assume, without deciding, that this is so.

### 2. Fitter's Subjective Intent

As the Chief Medical Officer, Fitter was required to—and did—sign Peralta's second-level appeal. The case against Fitter rests entirely on this signature. But the fact that Fitter signed the form doesn't mean that he knew about Peralta's complaints. To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Even if a prison official *should* have been aware of the risk, if he "was not, then [he] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson* v. *Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Peralta hasn't shown that Fitter should have been aware of any risk to Peralta's health, let alone that Fitter actually was aware. Although he supervised the dental department, Fitter isn't a dentist, and he didn't independently review Peralta's claims or read his chart before signing off on the second-level appeal. Instead, he relied on the medical opinions of the staff dentists who had investigated Peralta's complaints and already signed off on the treatment plan.

Fitter understood his role to be largely administrative, ensuring that the proper personnel had signed off on a reasonable course of treatment, not second guessing staff dentists' medical judgments. And how could he have? Even if he had looked at Peralta's chart, he wouldn't have been able to tell whether Peralta had a serious medical need and what the best course of treatment was. *See Johnson* v. *Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006); *Meloy* v. *Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002).

Peralta argues that a reasonable jury could nevertheless "conclude that by signing off on dental second-level appeals and placing inmates back on the extensive waiting list without reviewing their records . . . Fitter was . . . deliberately indifferent to the serious risk posed by his actions to inmates *in Mr. Peralta's position*." (emphasis added); *see Redman*, 942 F.2d at 1446. But Fitter's decision to sign appeals that he knew had already been reviewed by at least two qualified dentists, when he had no expertise to contribute to that review, isn't a wanton infliction of unnecessary pain. *See Estelle*, 429 U.S. at 104.

### 3. Dillard's Subjective Intent

Unlike Fitter, Dillard is a dentist. Although he was required to sign Peralta's second-level appeal, he didn't. Instead, the appeal was signed by Dr. Cassim, a staff medical doctor. Dillard didn't review Peralta's medical records or meet with him prior to the filing of the lawsuit. Dillard testified that he would authorize someone else to sign the second-level responses on his behalf when he knew he would be absent from the prison because appeals had to be processed quickly. As there's no evidence that Dillard

participated in Peralta's treatment, Peralta hasn't proven that Dillard was aware of Peralta's complaints.

Peralta argues that the lawsuit itself put Dillard on notice, but he cites no cases holding that the mere filing of a lawsuit can create independent liability under section 1983. Section 1983 complaints often allege numerous violations, many of which turn out not to be supported by the evidence. It would be unfair to make section 1983 defendants liable merely for failing to sift through what are often rambling and incoherent pro se complaints to determine the truth of each allegation, even before discovery has begun.

Peralta also argues that Dillard was deliberately indifferent to the suffering of prisoners in Peralta's position by having a non-dentist sign inmate appeals and failing to read them himself. To find for Peralta, a jury would have had to conclude that Dillard's behavior wasn't merely negligent, but wanton. *See Estelle*, 429 U.S. at 104. At most, Peralta has shown that Dillard failed to follow required procedures. But Dillard's failure to follow such procedures isn't, of itself, enough to establish a violation of Peralta's constitutional rights. *See Ramirez* v. *Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann* v. *Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (order). Peralta must prove both (1) that the failure to follow procedure put inmates at risk and (2) that Dillard *actually knew* that his actions put inmates at risk. *See Gibson*, 290 F.3d at 1188. There wasn't enough evidence for any reasonable juror to draw that conclusion.

Like Fitter, Dillard understood his role to be administrative. He didn't think that the Chief Dental Officer was required to interview prisoners or review medical records, or that he should second-guess staff dentists'

diagnoses. Dillard knew that first-level appeals were signed by two staff dentists, in this case Drs. Kumar and Brooks, and that another doctor would have reviewed the appeal in his place to make sure all of the proper procedures were followed. Perhaps Dillard should have known that his actions put prisoners at risk. But, "[i]f a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id.* Because Peralta hasn't shown that Dillard had actual knowledge, judgment as a matter of law was appropriate.

In any event, any error was harmless. *See Goulet* v. *New Penn Motor Express, Inc.*, 512 F.3d 34, 42–43 (1st Cir. 2008). Despite Peralta's assertions to the contrary, there's no way that the jury could have found that Dillard and Fitter were liable after finding that Brooks was *not*. *See supra* pp. 10–13; *cf. Corales* v. *Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); *Jackson* v. *City of Bremerton*, 268 F.3d 646, 653–54 (9th Cir. 2001). Peralta hasn't pointed to anything that Fitter or Dillard could have done that Brooks couldn't. Like Brooks, Fitter and Dillard had no control over the budget. Not only did they have no say over how much money was allocated to the prison, but they couldn't take money allocated for one purpose and use it for another. They had no input into the prison's funding levels or even how many dental positions the prison would have. Because the case against Dillard and Fitter was identical to that against Brooks, by finding Brooks not liable, the jury essentially resolved the question of Dillard's and Fitter's liability as well.

### 4.  Law of the Case

Finally, Peralta argues that the law of the case doctrine precluded the district court from granting Fitter and Dillard judgment as a matter of law because it had previously refused to grant them summary judgment.   But the denial of a summary judgment motion is never law of the case because factual development of the case is still ongoing.   Denial of summary judgment may result from a factual dispute at the time.  That dispute may disappear as the record develops.  *See Shouse* v. *Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (citing *Preaseau* v. *Prudential Ins. Co. of Am.*, 591 F.2d 74, 79–80 (9th Cir. 1979)).

Peralta points to a passage in *Federal Insurance Co.* v. *Scarsella Bros.*, 931 F.2d 599 (9th Cir. 1991), indicating that we overstated the rule when we said in *Shouse* that "the law of the case doctrine does not apply to pretrial rulings."  *Id.* at 601 n.4 (internal quotation marks omitted).   According to *Scarsella Bros.*, pretrial rulings can create binding law of the case if the court "clearly intended to decide the issues at hand."  *Id.*

To the extent that *Scarsella Bros.* purported to hold that the law of the case doctrine bars district courts from re-considering pretrial rulings, we overrule it.  Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case.  Given the nature of such motions, it could not be otherwise.  At the summary judgment stage, for example, trial courts ask only whether there could be a material issue of fact.  They must draw all inferences in the non-movant's favor, *see Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and rest their rulings on the evidence that they think *could* be introduced at trial.

But when considering whether to grant judgment as a matter of law, they look only at the evidence actually introduced at trial.

It makes no sense to say that a ruling that the plaintiff could hypothetically prove some set of facts that would support his claim prevents a district court from later finding that the plaintiff had not, in fact, proven those facts. Nor to say that if a district court realizes an earlier ruling was mistaken, it can't correct it, but must instead wait to be reversed on appeal. All that would do is waste both the courts' and litigants' time and resources. Thus, Wright and Miller have observed that, although "[i]t is proper [for a district judge] to refuse to reconsider a summary judgment ruling[,] . . . [d]enial of summary judgment often is reconsidered." 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478.1 (2002). "Denial can easily be followed," as it was here, "by judgment as a matter of law or dismissal after trial." *Id.*

Peralta's case illustrates the point. The evidence introduced at trial went beyond that presented in the motion for summary judgment. *See Old Person* v. *Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002). Dillard and Fitter moved for summary judgment on the grounds that (1) Peralta hadn't presented expert evidence and (2) Dillard and Fitter weren't personally involved in Peralta's care. The district court found that the lack of an expert alone wasn't enough to entitle Fitter and Dillard to summary judgment, and that there were material questions of fact as to whether Peralta had a serious medical need, what kind of care Peralta received at the prison and when Fitter and Dillard became aware of Peralta's complaints. The court noted, for example, that "[w]hether or

not Dillard personally signed the Second Level Appeal, authorized someone else to sign on his behalf, or was wholly unaware of the document is a question of fact." But after Peralta had presented his case, the court found that there was no evidence that either doctor knew about Peralta's alleged condition. Therefore, the district court didn't abuse its discretion in granting Dillard and Fitter judgment as a matter of law. *See Milgard Tempering, Inc.* v. *Selas Corp. of Am.*, 902 F.2d 703, 714–15 (9th Cir. 1990).

**AFFIRMED**.

CHRISTEN, Circuit Judge, with whom RAWLINSON, M. SMITH, and HURWITZ, Circuit Judges, join, and with whom BYBEE, Circuit Judge, joins as to Parts I, II, and III, dissenting in part and concurring in part:

Twenty years ago, the United States Supreme Court observed: "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations and quotation marks omitted). The majority characterizes Peralta's Eighth Amendment claim as arising from a "several-month delay in getting his teeth cleaned and an alleged failure to treat his pain." But Peralta's claim is based on the defendants' failure to put him on the prison's emergency dental care list for conditions the prison's dentist admitted qualified for emergency care: severe pain, bleeding gums, and a bacterial infection. Peralta remained on the prison's routine care list

for 18 months. During that time, he developed periodontitis and severe bone loss, and the prison's treating dentist acknowledged he suffered severe pain.

The decision announced today overturns more than thirty years of circuit precedent by holding that lack of resources is a defense to providing constitutionally inadequate care for prisoners. Because it will deny any remedy for prisoners who have suffered injuries due to prison officials' deliberate indifference and eliminates an important incentive for improving prison conditions, I respectfully dissent.

## I.

Peralta complained of cavities, bleeding gums, and severe pain within days of arriving at California State Prison, Los Angeles County (Lancaster). After about a month without treatment, Peralta filed his first appeal, asking for treatment for his infected teeth, cavities, and severe pain.

Dr. Brooks, a treating dentist at the prison, interviewed Peralta about four months later. He diagnosed Peralta with periodontal disease, a bacterial infection that can cause the gums to swell and bleed and can lead to the loss of the bone that supports the teeth. Dr. Brooks testified that cleaning and scaling is part of the treatment for periodontal disease.

Dr. Brooks did not doubt that Peralta was in severe pain, and his testimony confirmed that Peralta's dental problems entitled him to a spot on the emergency list. Working with too few colleagues and too many patients to see, Dr. Brooks did not treat Peralta's periodontal disease or prescribe antibiotics to treat Peralta's infection. Instead, he asked Peralta which tooth hurt the most and scheduled that tooth for

extraction three months later. Dr. Brooks did not examine Peralta's other teeth for cavities or infection.

Peralta appealed again, stating that he had been left with bleeding gums and infected teeth and was in severe pain. He received a written response informing him that there were long delays at the prison and that he was on a waiting list for dental care.

The dentists at Lancaster prison kept one waiting list for patients needing routine care and another list for patients needing emergency care. If a prisoner's request was classified as an emergency, he was entitled to receive treatment ahead of others on the routine care list. Peralta remained on the waiting list for routine dental care, and he waited three more months for his second appointment.

At this visit, Dr. Brooks told him that the tooth could be saved after all, and Peralta decided against the scheduled extraction. Again Dr. Brooks did not prescribe a course of treatment for Peralta's periodontal disease or clean his teeth. He did not address Peralta's concern that he had cavities. Peralta received twelve Ibuprofen pills and some medication for his infection, and eleven more months passed before Dr. Brooks saw Peralta again.

By the time of the third visit, Peralta was suffering from advanced periodontitis. We do not need to take Peralta's word about the nature or severity of his condition; Dr. Brooks testified to these observations and diagnosis at trial. He also testified that Peralta's gums were bleeding and that he had sustained severe bone loss by the time of the third visit, which occurred about 18 months after Peralta first asked for

treatment at Lancaster. This time, Dr. Brooks cleaned Peralta's teeth but still did not examine them for cavities.

Peralta was transferred to Mule Creek State Prison less than two months later. There, he received treatment for periodontal disease and had seven cavities filled over the course of several visits. Peralta testified that he was happy with the dental care he received at Mule Creek.

The defendants argued at trial that Dr. Brooks was overworked and the prison understaffed. To anyone familiar with the conditions of California's prisons, it will come as no surprise that prison officials there have inadequate resources. *See Brown v. Plata*, 131 S. Ct. 1910, 1923 (2011) ("Overcrowding has overtaken the limited resources of prison staff; imposed demands well beyond the capacity of medical and mental health facilities; and created unsanitary and unsafe conditions that make progress in the provision of care difficult or impossible to achieve."). Nor is it surprising that providers working in chronically understaffed and underfunded prison medical and dental facilities are sometimes unable to provide adequate care. *Id.* (describing how overcrowding leads to "grossly inadequate provision of medical and mental health care").

The defendants argued that they should be relieved of liability for any violations of the Eighth Amendment because of the lack of resources at Lancaster. Consistent with Ninth Circuit precedent, Peralta proffered a jury instruction that "the lack of staffing or other resources in the dental department at the Lancaster facility is not a defense to liability under Section 1983." Though this had been a correct statement of the law in the Ninth Circuit for approximately thirty years, *see Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.

1986); *Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979), the district court instructed the jury that defendants were entitled to rely on lack of resources as a defense to the allegation that Peralta's Eighth Amendment rights had been violated.

## II.

The Eighth Amendment imposes upon prison officials the duty to provide humane conditions of confinement; prison officials must ensure that prisoners receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832. A prison official violates the Eighth Amendment when two conditions are met: "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal citations and quotation marks omitted). Though the majority characterizes Peralta's case as being about "the delay in cleaning his teeth," in the end the majority recognizes that even the defendants did not contest that Peralta's medical condition was "objectively, sufficiently serious." *Cf. Hunt v. Dental Dep't*, 865 F.2d 198, 199–200 (9th Cir. 1989) (allegation that prisoner suffered bleeding gums and broken teeth for three months while waiting for dental care was sufficient to state a claim for deliberate indifference under § 1983). The first prong of *Farmer* is not at issue on appeal.

*Farmer's* second requirement is that "a prison official must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal citations and quotation marks omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.*

*Farmer* examined the deliberate indifference standard and made clear that a plaintiff need not demonstrate the prison official intended harm, or even that the official knew harm would result from the challenged conditions of confinement. *Id.* at 835. *Farmer* held that a prison official may be liable under the Eighth Amendment for deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In other words, the official must "consciously disregard a substantial risk of serious harm." *Id.* at 839 (internal quotation marks and alteration omitted).

Today, our court overturns more than thirty years of circuit precedent by holding that lack of resources is a defense to a damages claim that a prisoner was denied the constitutionally-required minimum threshold for adequate care. The jettisoned circuit precedent dates back to 1979 when, writing for the Ninth Circuit, now-Justice Kennedy explained that "the cost or inconvenience of providing adequate facilities is not a defense to the imposition of a cruel punishment." *Spain*, 600 F.2d at 200. Our circuit reiterated and reaffirmed this rule in *Jones*, 781 F.2d at 771, and, much more recently, in *Snow v. McDaniel*, 681 F.3d 978, 984–87 (9th Cir. 2012).

The plaintiff in *Jones* filed a § 1983 suit seeking damages and injunctive relief against a county jail, jail doctors, supervisory jail personnel, and county officials for deliberate indifference to his medical needs. 781 F.2d at 770. He alleged that he was refused a necessary hernia surgery because of the county's "tight budget." *Id.* at 771. Our circuit reversed the district court's dismissal of the claims

against the individual defendants, holding that by alleging he was denied necessary surgery due to budgetary constraints, Jones pleaded sufficient facts to constitute deliberate indifference. *See id.* at 771–72 ("We find no other explanation in the record than the budget concerns for denying Jones's surgery. *Budgetary constraints, however, do not justify cruel and unusual punishment.* . . . Because Jones has properly alleged both that he had a serious medical need and that the defendants were deliberately indifferent to that need, he has adequately stated a cause of action under the fourteenth amendment." (emphasis added)). As in *Jones*, Peralta's case permits "no other explanation in the record than the budget concerns" for denying treatment for his "objectively, sufficiently serious" medical condition.

In *Snow*, we reaffirmed the rule that lack of resources cannot be a defense for the failure to provide constitutionally-required medical care for prisoners. The prisoner in *Snow* sued doctors and wardens of the Nevada Department of Corrections for declaratory and injunctive relief and damages under § 1983. 681 F.3d at 984. He alleged these officials were deliberately indifferent to his medical needs by denying him necessary hip surgery. *Id.* at 984–85. Citing *Jones*, we concluded that the record supported the inference that the defendants denied surgery to Snow due to "improper motives"—namely, "to avoid eventually paying for it"—and that this inference could show the defendants acted with deliberate indifference. *See id.* at 987.

The majority assures us that prisoners will still be able to bring § 1983 claims if they seek injunctive relief and attempts to distinguish *Jones* and *Snow* on the basis that Peralta sought only money damages. But the principle in *Jones* and *Snow* was first articulated in *Spain*, which drew no distinction

between the type of relief sought by the plaintiff: "The cost or inconvenience of providing adequate facilities is not a defense to the imposition of a cruel punishment." 600 F.2d at 200. The majority's attempt to retroactively apply a newly-minted distinction between claims for injunctions and claims for damages to our decision in *Spain* is not convincing. There is nothing tentative or limited about *Spain's* directive that "cost . . . is not a defense to the imposition of a cruel punishment," *id.*, and, until today, we have never suggested that cost may be a defense to Eighth Amendment claims for damages. In fact, *Snow* suggests the opposite. *Snow* specifically examined a plaintiff's claim for damages for defendants' deliberate indifference to his serious medical needs and rejected the cost defense in that context. *See Snow*, 681 F.3d at 985–87. Snow's claim for injunctive relief to remedy a "custom or policy" of inappropriate treatment—which the district court had dismissed as moot—was analyzed separately. *See id.* at 991.

The rule articulated in *Spain*, *Jones*, and *Snow* recognizes that the constitutionally-required threshold for the humane treatment of prisoners is impossible to safeguard if prison officials are permitted to claim lack of resources as a defense. In the case of California prisons, there can be no doubt that chronic underfunding and overcrowding have plagued prison administrators and the prison population for decades. *See Brown*, 131 S. Ct. at 1923–26 (describing "exceptional" overcrowding in California's prisons and the resulting inability to provide minimal, adequate medical care to prisoners). The majority's decision will effectively prevent prisoners from bringing suits for damages against prison officials who have violated their Eighth Amendment rights by demonstrating deliberate indifference to serious medical needs: those who actually control prison budgets are immune

from damage suits, *Tenney v. Brandhove*, 341 U.S. 367, 376–79 (1951) (providing absolute immunity for state legislators); and prison officials responsible for substandard care or conditions will be shielded by the newly-announced "lack of resources" defense.[1]  Under the lack of resources defense, even prisoners who suffer grievous injury will be left with no recourse at all—what good is prospective injunctive relief to a prisoner whose appendix has burst?  The concern that holding prison officials personally liable would be unfair overlooks the reality that California indemnifies employees for torts committed within the scope of their employment,[2] and pays the cost of their defense.[3]

The majority suggests that I seek an end run around the Eleventh Amendment by subjecting the state to financial pressure to avoid cruelly and unusually punishing its prisoners.  But the state's decision to indemnify Dr. Brooks was voluntary.  Without the ability to seek damages, prisoners who sustain injuries from overcrowding and underfunding will be denied any meaningful form of relief, even for grievous violations of the Eighth Amendment.  As Judge Hurwitz persuasively explains, California's freely-assumed obligation to its employees does not change this simple fact.  If anything, the new distinction between claims for damages and claims for injunctive relief is an end run around the congressional directive embodied in 42 U.S.C.

---

[1] The majority suggests that a prisoner could pursue a *Monell* claim for damages against a municipal entity.  But municipal entities do not operate state prisons.

[2] Cal. Gov't Code § 825.

[3] Cal. Gov't Code §§ 825, 995.

§ 1983 that there should be redress when constitutional rights are violated. *Simpson v. Thomas*, 528 F.3d 685, 692 (9th Cir. 2008) ("Congress's purpose in enacting § 1983 was to create a novel civil remedy for violation of established constitutional rights." (citation and internal quotation marks omitted)).

Another overlooked reality is that the majority of cases in which a prisoner successfully proves a violation of his constitutional rights result in low damage awards for the prisoner. *See Woods v. Carey*, 722 F.3d 1177, 1182 n.6 (9th Cir. 2013) (quoting Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1603 (2003) ("[T]he mean damages for cases won at trial by inmate civil rights plaintiffs was $18,800, and the median was a mere $1000.")). Even small damage awards can affect substantial change in prison conditions; yet the rule announced today eliminates this modest, but important, incentive. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 651 (1980) ("Moreover, § 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well.").

## III.

The district court's jury instruction should not have been given, even under the newly-announced lack of resources defense, because it was not supported by the evidence and it was misleading; the evidence did not show that a lack of resources had anything to do with Brooks' failure to place Peralta on the emergency care list. *See Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) ("[J]ury instructions must fairly and adequately cover the issues presented, must

correctly state the law, and must not be misleading." (internal quotation marks omitted)).

There is no real question about whether the prison was understaffed; in fact, it was so understaffed that Dr. Brooks testified that the bulk of his workday was spent treating patients on the emergency care list.[4]  He was only able to see patients on the routine care list if there was any time remaining at the end of the day.  The net effect was that prisoners on the routine care list waited about twelve months before receiving any care.

Because those on the routine care list only saw a care provider if there was any time remaining at the end of the day, the existence of the emergency care list is critical to the outcome of this case.  Dr. Brooks testified that the particulars of Peralta's conditions—including bleeding gums and severe pain—would qualify as a dental emergency that entitled prisoners to be placed on the emergency care list.  The Chief Dental Officer at the prison, Dr. Dillard, also testified that complaints of tooth pain and bleeding gums were given higher priority than routine cleanings.  Yet Peralta was never moved to the emergency care list, and the defendants did nothing to rebut the evidence that the prison's overextended staff would have more promptly provided dental care to Peralta if he had been given a spot on that list.  The district court's instruction was unsupported and misleading because defendants offered no evidence to show that lack of funding

---

[4] That the staff was over-committed cannot be disputed.  As the majority notes, Dr. Dillard testified that state policy called for a ratio of one dentist for every 950 prisoners, but the inadequate resources allocated to Lancaster left the prison with a ratio as high as one dentist to every 1,500 prisoners.

had anything to do with the failure to move Peralta from the routine care list to the emergency care list.

The majority suggests Peralta invited error by proffering a jury instruction that directed the jury to disregard evidence of understaffing and a lack of resources at the prison. This argument is premised on the assertion that "Peralta's proposed instruction presupposed that there *was* sufficient evidence about the lack of resources at Brook's disposal." This mischaracterizes Peralta's argument. Peralta's proffered instruction merely stated that the jury had heard evidence that the prison was understaffed, which they had, and instructed the jury that this lack of resources was not a defense to a claim of deliberate indifference. The instruction actually given to the jury turned the proffered instruction upside down. Peralta's proffered instruction was a correct statement of the law; he did not invite any error.**[5]**

Without support from the record, the majority also asserts that placing Peralta on the emergency care list would have inevitably delayed another prisoner's treatment. This is speculation. The record reveals nothing about whether or how patients on the emergency care list were triaged, or the order in which prisoners on the emergency care list were treated. What we do know is that Peralta would have received care more promptly if he had been moved from the routine care list to the emergency care list because Dr. Brooks was only able to serve prisoners on the routine care list if there was any time left over at the end of each day. The

---

**[5]** Error is only invited when the objecting party (1) proposed the allegedly flawed jury instruction; and (2) intentionally waived a known right by doing so. *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc).

majority concedes that this was the way the emergency care list worked by noting that prisoners sometimes try to "jump the line" by exaggerating symptoms. Peralta wasn't asking for special consideration. He was asking only that he be placed on the emergency list like other inmates with qualifying dental conditions, rather than waiting months on the routine care list until it was discovered he had periodontitis and severe bone loss.

## IV.

Before the case went to the jury, the district court entered a directed verdict in favor of Drs. Fitter, the chief medical officer, and Dillard, the chief dental officer. As to Dr. Dillard, the district court found that "[t]here is no evidence here that [Dr. Dillard] had actual knowledge of a serious medical condition. . . . At most, he was negligent in the discharge of his duties." The district court similarly found that there was "no evidence in the record that Dr. Fitter was in fact aware of a serious medical condition which he then treated with deliberate indifference. . . . At most, his conduct was negligent." The district court ruled that Dr. Fitter was entitled to qualified immunity but did not make a comparable ruling regarding Dr. Dillard.

I join the majority in affirming the dismissal of Peralta's claims against Dr. Fitter, but I disagree with the majority's conclusion that a directed verdict was appropriate on Peralta's claims against Dr. Dillard. As the supervising dentist, Dr. Dillard testified that he was required by California law to conduct second level appeals. *See* 15 Cal. Code Reg. § 3084.7(d)(2). Dr. Dillard also testified that he was the only supervisor with the expertise to determine whether the first level response to an inmate's complaint was proper. But Dr.

Dillard testified that it was his practice to authorize someone else to sign second level responses on his behalf when he was to be absent in order to process appeals quickly. Dr. Dillard conceded that prison staff were able to get extensions to review appeals, but he testified that "no one likes to be late on appeals because it doesn't look good and the warden doesn't favor that." Apparently to avoid an untimely response that wouldn't look good, Dr. Dillard did not conduct or sign Peralta's second level appeal, nor was it even signed by a dentist. Instead, Dr. Dillard arranged for a prison physician to review the dental appeals in his place. Dr. Dillard never met or examined Peralta, or looked at Peralta's dental records, until after Peralta filed his lawsuit.

The majority holds that Dr. Dillard's failure to review Peralta's appeal—an obligation conferred upon him by California law—shields him from liability. Unchecked, this rule will allow care providers to defeat claims of deliberate indifference by arguing that they had no actual knowledge of the prisoner's condition, even if that lack of knowledge is the result of failing to perform duties expressly assigned to them. The majority not only charts a path that permits prison officials to escape liability by arguing that they have inadequate funds to provide emergency care to inmates, it condones an escape hatch from liability available to officials willing to look the other way or who fail to perform assigned duties that might cause them to gain actual knowledge of an inmate's condition. Neither circuit nor Supreme Court authority permits such a result.

In *Farmer*, the Supreme Court rejected concerns that prison officials could escape liability by "ignor[ing] obvious dangers to inmates," reasoning that a plaintiff need only show the "official acted or failed to act despite his knowledge of a

substantial risk of serious harm." *Farmer*, 511 U.S. at 842. A prisoner is not required to show that an official intended for harm to occur, or that the official had actual knowledge that harm would occur, to show that the Eighth Amendment has been violated. *Id.*

Judgment as a matter of law is only appropriate if no reasonable juror could find in Peralta's favor. *See El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005). Here, a reasonable jury could conclude that some Lancaster prisoners' emergency dental problems would go unaddressed if the only staff dentist qualified to review first level appeals did not actually review them. Dr. Dillard knew he was obligated to review the first level appeals, and he knew he was the only staff dentist qualified to do so. On this record, a jury could conclude that Dr. Dillard did not fulfill his obligations and consciously disregarded a substantial risk of serious harm to the dental needs of prisoners at Lancaster. The law does not require that Dr. Dillard intended harm to result. Judgment as a matter of law was inappropriate.

## V.

"A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." *Brown*, 131 S. Ct. at 1928. "If government fails to fulfill this obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation." *Id.*

The decision announced today overturns more than thirty years of circuit precedent by holding that a lack of resources is a defense to providing constitutionally inadequate care for prisoners. It effectively eliminates § 1983 suits for damages

against prison officials, denies relief to those prisoners who have already suffered injuries, even when they are grievous, and permits prison officials to escape liability by failing to perform job duties imposed by law. For these reasons, I respectfully dissent.

HURWITZ, Circuit Judge, with whom RAWLINSON, M. SMITH, and CHRISTEN, Circuit Judges, join, and with whom BYBEE, Circuit Judge, joins as to Parts I and II, dissenting in part and concurring in part:

The majority opinion has something of a seductive quality. It pits Peralta, a jailhouse lawyer, against Dr. Brooks, an overworked dentist. The case involves dental care, an amenity not available to large portions of the law-abiding population. Given the majority's characterization of the *dramatis personae* and the issue, it is not difficult to predict the result.

But, of course, this case is really not about just Peralta and Dr. Brooks. Nor is it about an alleged constitutional right to dental care.[1] Rather, this case is before the en banc court because it involves, in the words of Federal Rule of Appellate Procedure 35(a)(2), a "question of exceptional importance." That question is whether a state can shield itself from the consequences of denying constitutionally required medical

---

[1] The majority suggests that Peralta sued because his teeth were not cleaned. Maj. Op. at 5–6, 14. Judge Christen's dissent rightly dismisses this suggestion. Christen Diss. at 21–22. Given that there is no clearly established right to teeth cleaning, the opinion could have dismissed such a claim on qualified immunity grounds.

treatment to those it incarcerates by deliberately choosing not to appropriate sufficient funds for that treatment.

The majority effectively holds that a state can first choose to underfund the medical treatment of its wards, and then excuse the Eighth Amendment violations caused by the underfunding. Today's decision thus not only forecloses relief to inmates who suffer cruel and unusual punishment, but also encourages future constitutional violations. I respectfully dissent.

# I

Peralta asserted Eighth Amendment claims against three defendants—Dr. Brooks (the treating dentist), Dr. Dillard (the Chief Dental Officer), and Dr. Fitter (the Chief Medical Officer). Because only the claim against Dr. Brooks went to the jury, the instruction to consider the financial resources made available to the prison system by the State of California applies to that claim alone. But, the history of the claims against the other two defendants is nonetheless instructive.

The district court determined that Dr. Fitter had qualified immunity, and directed a judgment in his favor; the court did not reach the issue of qualified immunity as to Dr. Dillard, finding that Peralta had not established a prima facie case of deliberate indifference and also issuing a judgment as a matter of law on his behalf. Dr. Brooks, however, did not assert qualified immunity. Thus, the "resources" jury instruction only comes into play in cases in which qualified immunity has not been granted and in which the district court finds sufficient evidence of an Eighth Amendment violation to submit the claim to a jury. *See* Maj. Op. at 11 ("We have no quarrel with the dissenters' view that Peralta may have

suffered an Eighth Amendment violation.").  The majority
thus holds that even if a plaintiff makes out a prima facie
Eighth Amendment violation, an agent of the state may
nonetheless justify cruel and unusual punishment by claiming
that the state itself caused the problem by withholding the
resources necessary to provide appropriate medical care.

This turns the law upside down.  A state official inflicts
cruel and unusual punishment by exhibiting deliberate
indifference to a prisoner's serious medical needs. *Estelle v.
Gamble*, 429 U.S. 97, 103–04 (1976).  Deliberate indifference
in turn requires subjective culpability—the official must
know of and disregard an excessive risk to inmate health.
*Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994).  Although
the Supreme Court has left open whether fiscal constraints are
a defense to an Eighth Amendment claim, in doing so Justice
Scalia aptly noted that "it is hard to understand how" funding
issues "could control the meaning of 'cruel and unusual
punishments' in the Eighth Amendment." *Wilson v. Seiter*,
501 U.S. 294, 301 (1991).  Four justices went even further,
criticizing the *Wilson* majority for even "leav[ing] open the
possibility, for example, that prison officials will be able to
defeat a § 1983 action challenging inhumane prison
conditions simply by showing that the conditions are caused
by insufficient funding from the state legislature rather than
by any deliberate indifference on the part of the prison
officials." *Id*. at 311 (White, J., concurring in the judgment).

Until today, the law of this Circuit was that "budgetary
constraints . . . do not justify cruel and unusual punishment."
*Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986); *accord
Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012).  The
majority overrules *Jones* and *Snow* and holds that an official
does not act with deliberate indifference if he (a) lacks the

"resources" to treat an inmate and (b) is sued for money damages. Maj. Op. at 8–10. But, the Eighth Amendment prohibits all cruel and unusual punishments, not simply those inflicted by officials of states with well-funded prison medical systems. More importantly, there are likely no such states. *See* Andrew P. Wilper et al., *The Health and Health Care of US Prisoners: Results of a Nationwide Survey*, 99 Am. J. Pub. Health 666, 669–71 (2009). Today's opinion therefore renders damages suits by inmates who suffer grievous injuries as a result of constitutionally forbidden indifference all but impossible in practice. In every case in which state actors are sued for failing to provide minimal medical care—even those cases involving loss of life or serious permanent injury—the defense will be lack of resources, and that defense will almost surely succeed.

This will encourage further constitutional violations: If states do not have to pay damages for depriving inmates of the level of care required to avoid violating the Eighth Amendment, there will be little reason to increase appropriations for prisoner care.

## A

Not to worry, the majority says. Although Dr. Brooks can assert a lack of resources defense, that defense will not be available to those who fail to request sufficient resources. Maj. Op. at 10–11. But again, in reality, no such defendants will exist. Every putative defendant will be able to honestly plead poverty.

Wardens, medical supervisors, and staff doctors have no control over California's prison budget, which contains "line items" for prison medical, mental health, and dental care.

Budget Act of 2013, Assemb. B. 110, 2013 Reg. Sess., § 2.00, No. 5225-002-0001 (Cal. 2013) (allocating prison medical funding); *see also id.* § 32.00 (limiting departmental expenditures to the appropriated amount); Cal. Gov't Code § 13324 (prohibiting expenditures in excess of a department's budget). Prison officials may only spend in excess of the Department of Corrections and Rehabilitation's budget if so ordered by a court-appointed receiver. Cal. Assemb. B. 110, § 2.00, No. 5225-002-0001; *see Plata v. Schwarzenegger*, No. C01-1351 TEH, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005). The entities that control California's prison budget—the receiver and the state legislature—are immune from damages suits. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (providing absolute immunity for state legislators); *Mosher v. Saalfeld*, 589 F.2d 438, 442 (9th Cir. 1978) (granting absolute quasi-judicial immunity for receivers). And a suit for damages against the state itself is barred by sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 676 (1974). Thus, even accepting the majority's limitation of its rule, there is really no one left to sue.

## B

The majority's alternative answer is that lack of resources is not a defense to a suit for injunctive relief. Maj. Op. at 9. But injunctive relief provides no comfort to an inmate who loses a limb because of untreated diabetes. For such constitutional violations, "it is damages or nothing." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 410 (1971) (Harlan, J., concurring in the judgment). Indeed, even for prisoners not yet injured by constitutionally deficient conditions, history counsels skepticism about the utility of injunctive relief. *See Brown v. Plata*, 131 S. Ct. 1910, 1923–28 (2011) (documenting

California's failure, in the face of multiple remedial injunctions, to improve prison medical care).[2]

More importantly, the majority's distinction between damages and injunctive relief finds no support in the Eighth Amendment. Cruel and unusual punishment violates the Eighth Amendment regardless of the inmate's prayer for relief. But, in the eyes of the majority, refusing to treat an inmate because of budget constraints is cruel and unusual when an inmate requests equitable relief, but somehow not so when he requests monetary relief.

The majority has thus made injunctive relief the default remedy for Eighth Amendment violations. The law is precisely to the contrary. Rather, "[a] damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees . . . ." *Owen v. City of Independence*, 445 U.S. 622, 651 (1980). Moreover, Congress has warned that federal courts should rarely issue equitable relief in prison condition cases, Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A), and the Supreme Court has often emphasized the same, *see e.g.*, *Farmer*, 511 U.S. at 846–47; *Turner v. Safley*, 482 U.S. 78, 84–85 (1987); *Bell v. Wolfish*, 441 U.S. 520, 562 (1979); *Procunier v. Martinez*, 416 U.S. 396, 404 (1974).

---

[2] Obtaining equitable relief before one suffers permanent injury can require herculean efforts. A prisoner first has to exhaust administrative remedies. 42 U.S.C. 1997e(a). Then, a typically pro se litigant must either prevail in court or receive a favorable settlement. "Of 55,376 inmate civil rights cases that ended in 2000, 49,492 were coded as pro se. Of these, 1411 (2.85%) were coded as having settled; 491 (0.99%) were coded as having gone to trial; 52 (10.59% of trials) were coded as ending in a trial victory for the plaintiff." Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1610 n.158 (2003).

The majority thus today runs roughshod over the general presumption in favor of legal remedies over equitable relief. "[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief. Under the ordinary convention, the proper inquiry would be whether monetary damages provided an adequate remedy, and if not, whether equitable relief would be appropriate." *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992); *see also Carey v. Piphus*, 435 U.S. 247, 256–57 (1978) ("To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages."); *Bivens*, 403 U.S. at 395 ("Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty."). By denying inmates an adequate remedy at law, the majority inverts the basic law/equity presumption.

## II

In the end, the only rational justification for today's decision is concern for the prison medical provider. That solicitude is valid: With shoestring budgets, prison doctors must triage medical care. "California prison wardens and health care managers make the difficult decision as to which of [various class actions] they will fail to comply with because of staff shortages and patient loads." *Plata*, 131 S. Ct. at 1927 (quoting Receiver's Report re Overcrowding, *Plata v. Schwarzenegger*, No. C01-1351-TEH). It would, of course, be unfair to subject a doctor to personal liability because he could not immediately treat every inmate.

But this case does not deal with the imposition of liability on a doctor who was unable to see a patient. Peralta managed to become Dr. Brooks' patient, and the suit attacks decisions made by Dr. Brooks from that point forward. *Peralta v. Dillard*, 704 F.3d 1124, 1133–34 (9th Cir. 2013) (Berzon, J., dissenting). More importantly, the majority's focus on the personal liability of prison physicians ignores an important reality—the state is in every respect the real party in interest in a damages suit.

California indemnifies employees for torts committed in the scope of their employment.[3] Cal. Gov't Code § 825. "Indemnification is 'near[ly] universal' among state and local entities, either as a matter of official policy or practice." *Peralta*, 704 F.3d at 1136 (Berzon, J., dissenting) (quoting Schlanger, *supra*, at 1676 n.391).

California not only indemnifies prison officials named as defendants in § 1983 actions, but also pays for their legal defense. Cal. Gov't Code §§ 825, 995. Yet, the majority

---

[3] Every other state in our Circuit does the same. *See* Ariz. Rev. Stat. § 41-621; Idaho Code § 6-903; Mont. Code Ann. § 2-9-305; Nev. Rev. Stat. § 41.0349; Or. Rev. Stat. § 30.285; Wash. Rev. Code § 4.92.075. Although Alaska does not indemnify by statute, Alaska Stat. § 09.50.253(f), its collective bargaining agreement holds prison doctors harmless for torts committed in the scope of their employment. Collective Bargaining Agreement between the State of Alaska and the Alaska Correctional Officers Association, Art. 29, *available at* http://doa.alaska.gov/dop/fileadmin/LaborRelations/pdf/contracts/ACO ACO2012-2013.pdf. Hawaii authorizes, but does not mandate, indemnification. Hawaii Rev. Stat. § 662-16. But it also apparently protects prison doctors by agreement. Institutional, Health and Correctional Workers Bargaining Unit 10 Agreement, § 63.18, *available at* http://dhrd.hawaii.gov/wp-content/uploads/2012/12/BU-10-UPW-2007-09-CBA.pdf.

allows the state—while funding and directing the defense—simultaneously to argue that it would be unfair to impose liability because of budgeting decisions made by the state itself. If that defense succeeds, the only financial winner is the very entity that created the problem in the first place.[4]

We should not countenance such a charade. When a state funds its employee's defense and indemnifies him against any judgment, it ought not then assert that he is faultless because the state is really to blame. The policy concern that no doctor will work for a prison if he faces the possibility of personal liability has already been addressed (and apparently effectively so) by California's promise to hold the physician harmless. Having made the policy decision to incarcerate a large number of wrongdoers, California should not be allowed to avoid the Eighth Amendment consequences of that decision by systematically underfunding medical care. At a minimum, when a state attempts to do so, we should create an exception to the judge-made collateral source rule and allow the plaintiff to inform jurors that the state, not the individual defendants, will pay any compensatory damages awarded. *See Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003).

Such an approach would not, as the majority suggests, Maj. Op. at 11, violate state sovereign immunity. States have no obligation to indemnify their employees for damages imposed because of constitutional violations. But, when a

---

[4] California will not indemnify an employee who acts outside of the scope of employment. Cal. Gov't Code § 825. But, no such situation is presented here; all defendants clearly acted within the scope of their employment and were defended and indemnified by the State.

state chooses to do so, the state agent should not be heard to argue that the imposition of liability on him individually is unfair. Section 1983 and the Constitution do not codify a collateral source rule.

## III

Today's decision, as Judge Christen's dissent convincingly demonstrates, is wrong on the record of this case. But even if that were not so, the decision sweeps far too broadly, effectively foreclosing any liability for permanent injuries and deaths caused by the deliberate indifference of state funding authorities. I therefore dissent from the affirmance of the judgment in favor of Dr. Brooks.

For the reasons set forth in Judge Christen's dissent, I also cannot join the majority opinion insofar as it affirms the judgment as a matter of law in favor of Dr. Dillard (pretermitting, as did the district court, any claim of qualified immunity). As to Dr. Fitter, the majority correctly holds that he was entitled to qualified immunity, as he relied on his staff's medical judgment, and I join its opinion on that score alone.