**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FLEET C. HAMBY,<br>*Plaintiff-Appellant,*<br><br>v.<br><br>M.D. STEVEN HAMMOND, Chief<br>Medical Officer, Washington<br>Department of Corrections, in his<br>individual and official capacities;<br>M.D. SARA SMITH, Former Facility<br>Medical Director, Stafford Creek<br>Corrections Center, in her individual<br>capacity; BERNARD WARNER,<br>Secretary, Washington Department<br>of Corrections, in his individual and<br>official capacities,<br>*Defendants-Appellees.* | No. 15-35283<br><br>D.C. No.<br>3:14-cv-05065-<br>RBL<br><br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
February 2, 2016—Seattle, Washington

Filed May 2, 2016

Before: Alex Kozinski, Diarmuid F. O'Scannlain,
and Ronald M. Gould, Circuit Judges.

Opinion by Judge O'Scannlain;
Partial Concurrence and Partial Dissent by Judge Gould

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's summary judgment in favor of prison officials in an action brought by a prison inmate pursuant to 42 U.S.C. § 1983 alleging that officials were deliberately indifferent to his serious medical needs when they refused to grant his request for hernia surgery.

Plaintiff received surgery for his umbilical hernia after the district court granted his motion for a preliminary injunction and ordered prison officials to refer him to a surgeon for evaluation and possible surgical treatment. After receiving surgery, plaintiff sought damages for the pain he allegedly suffered because of the officials' refusal to authorize surgery prior to litigation. The panel held that the officials were entitled to qualified immunity because in light of existing precedent and the specific facts of this case, it was at least debatable that they complied with the Eighth Amendment. The panel determined that to the extent that the officials played any role in the decision to deny surgery, the record made clear that they did so based on legitimate medical

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

opinions that have often been held reasonable under the Eighth Amendment.

The panel held that the district court properly denied injunctive relief relating to plaintiff's potential inguinal hernia. The panel determined that plaintiff had not pointed to evidence which suggested that defendants' decision to forgo surgery for the potential inguinal hernia was medically unacceptable under the circumstances and made in conscious disregard of an excessive risk to plaintiff's health.

Concurring in part and dissenting in part, Judge Gould concurred only with the majority opinion's result regarding the denial of injunctive relief pertaining to plaintiff's potential inguinal hernia, and dissented from the rest of the majority opinion. Judge Gould stated that there was a genuine issue of material fact on whether the course of treatment the doctors chose in treating plaintiff's umbilical hernia was medically unacceptable under the circumstances, and whether they chose this course in conscious disregard of an excessive risk to plaintiff's health.

---

**COUNSEL**

Hank Balson, Public Interest Law Group, PLLC, Seattle, Washington argued the cause and filed the briefs for the plaintiff-appellant.

Timothy J. Feulner, Assistant Attorney General for the State of Washington, Olympia, Washington, argued the cause and filed the brief for the defendants-appellees. With him on the brief was Robert W. Ferguson, Attorney General for the State of Washington, Olympia, Washington.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether state prison officials can be made to pay damages to a prisoner who claims that they violated his Eighth Amendment rights when they refused to grant his request for hernia surgery.

I

Fleet C. Hamby is an inmate at the Stafford Creek Corrections Center in Aberdeen, Washington. In April 2012, Hamby fell off of a ladder while working his prison job as an electrician's assistant. A prison medical professional diagnosed him as having an umbilical hernia, meaning that a part of his intestine or abdominal fat had pushed through a weak spot in his abdominal wall, causing a bulge in his belly. Hamby's umbilical hernia was described as "small" and "easily reducible," which means that Hamby could push the hernia back into his abdomen by applying manual pressure or by lying down. Hamby was counseled on how to push the hernia back in if it popped out, and was also given a rib belt designed to keep the hernia in.

About two weeks later, Hamby saw another prison medical professional who noted that Hamby was in pain and had some abdominal tenderness and swelling, but could walk around without difficulty. Hamby was prescribed medication—which he was unable to take due to his other medical conditions—and was advised to continue using the rib belt for support.

By the end of 2012, Hamby was seen at least ten times by a handful of prison medical personnel. Hamby reported that he experienced sharp pains while sleeping, using the bathroom, and when he tried to sit for long periods. In June of that year, Hamby formally requested surgical repair for his hernia. But on July 19, Hamby rated his pain a three out of ten, and when he renewed his request for surgery in August his request was denied, with prison medical officials telling him that his "condition [would] continue to be monitored as needed by Health Services." Hamby was examined again on November 16, and his hernia was confirmed to be still "easily reducible." Hamby continued using the hernia belt in addition to a variety of prostate medications.

In March 2013, Hamby was seen by a doctor at a different prison. This doctor reported that Hamby was able to "make it to chow hall and back," and that he could use the bathroom. Hamby advised the doctor that his umbilical hernia "interfered with [his] sleep," made "sitting down . . . difficult," and generated "random pain." This doctor advised that surgery was not medically necessary at that time.

In late August 2013, Hamby's attorney sent a letter to Dr. G. Steven Hammond, the Chief Medical Officer for the Washington State Department of Corrections; Dr. Sara S. Smith, the Facility Medical Director at the Stafford Creek Corrections Center; and Bernard Warner, the Secretary of the Washington Department of Corrections ("prison officials"), asking them to reconsider Hamby's need for surgical treatment. Shortly thereafter, prison medical personnel presented Hamby's case to the prison's Care Review Committee ("CRC"), a group of medical professionals that decides whether proposed health care treatments are medically necessary under the prison's Offender Health

Plan.**[1]** Drs. Hammond and Smith were voting members, with Dr. Hammond also serving as committee chair. The CRC considered whether to authorize a surgical consultation, and possible surgical repair, for Hamby's umbilical hernia. The physician's assistant who presented the request for Hamby's surgery described Hamby's hernia as "easily reducible" and noted that although Hamby was in pain, he had been going to meals and his activities of daily living were not impaired.**[2]** The CRC denied the request, deeming surgery not medically necessary at that time, and recommended continued monitoring of Hamby's condition.

Hamby was subsequently examined by a physician's assistant who had treated him several times in the past. The physician's assistant noted that Hamby was attending classes and that his "activities of daily living were unaffected," and described his hernia as "minimal," and recommended monitoring. Hamby was later seen by a Department of Corrections urologist, who likewise opined that surgery was not medically necessary because Hamby "did not have continual pain and was still performing his ADLs without incident."

---

**[1]** The Offender Health Plan defines "medically necessary care" as care that meets one of several criteria, including "[r]educ[ing] intractable pain" or "[p]revent[ing] significant deterioration of [activities of daily living]."

**[2]** "Activities of daily living" ("ADLs") are "activities related to personal care and include bathing or showering, dressing, getting in or out of bed or a chair, using the toilet, eating, and walking or assisted mobility sufficient to accomplish these activities."

A

Hamby filed this lawsuit under 42 U.S.C. § 1983 in January 2014, against Dr. Hammond, Dr. Smith, and Secretary Warner. Hamby sued each in his personal capacity, and he sued Dr. Hammond and Secretary Warner in their official capacities as well. He claimed that the prison officials exhibited deliberate indifference to his serious medical needs, thereby violating his Eighth Amendment right to be free from cruel and unusual punishment. As of May 2014, when he moved for a preliminary injunction, Hamby rated the pain from his umbilical hernia "as a 5 on a scale of 1–10." In August 2014, the district court granted Hamby's motion for a preliminary injunction, ordering the prison officials to refer him to a surgeon for evaluation and to authorize surgical treatment if the surgeon so advised. Hamby received his hoped-for surgery, and his umbilical hernia was repaired on October 13, 2014.

B

After receiving surgery on his umbilical hernia, Hamby continued to press his case, seeking damages for the pain he allegedly suffered because of the prison officials' refusal to authorize surgery prior to litigation. On cross-motions for summary judgment, the district court ruled for the prison officials, holding that they had not in fact been deliberately indifferent to Hamby's serious medical needs—and so they had not violated Hamby's Eighth Amendment rights, after all—but that even if they had, qualified immunity would shield them from having to pay damages.

## C

In addition to the ordeal surrounding his umbilical hernia, Hamby complains of ailments triggered by a particularly harsh sneeze that left him reeling in October 2012. This sneeze may or may not have caused an inguinal hernia—which occurs in the groin area, when fatty or intestinal tissue pushes through a weak spot in the abdominal wall—but Hamby was never diagnosed as having an inguinal hernia. Nonetheless, in response, prison medical personnel gave him a jockstrap to reduce the pain.

In May 2014, Hamby declared that "[t]he pain from the inguinal hernia had subsided for several months," although it had "recently reappeared" and was "intermittent, ranging between 0 and 5." In September 2014—at the time Hamby moved for summary judgment—he declared that "the pain related to [his] possible inguinal hernia [had] subsided," and was "currently at a level he can tolerate." Still, Hamby requested a permanent injunction requiring the prison officials "to diagnose and treat his possible inguinal hernia should the pain associated with that condition once again become intolerable."

The district court denied Hamby's request for a permanent injunction and granted summary judgment to the prison officials, ruling that their conduct in response to Hamby's possible inguinal hernia did not violate Hamby's rights under the Eighth Amendment. Hamby timely appealed the district court's decision.

## II

We review de novo the district court's ruling on cross-motions for summary judgment. *Trunk v. City of San Diego*, 629 F.3d 1099, 1105 (9th Cir. 2011). We must view the evidence in the light most favorable to the non-moving party, and then ask whether there is any "genuine dispute as to any material fact" under the governing substantive law. Fed. R. Civ. P. 56(a). "As to materiality," the Supreme Court has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III

Hamby wants to hold the prison officials personally liable in damages because they refused to refer his umbilical hernia for surgery until they were ordered to do so by a preliminary injunction entered earlier in this litigation. To prevail, Hamby must defeat the officials' defense of qualified immunity. And to do that, he must show, "first, [that he] suffered a deprivation of a constitutional or statutory right; and second [that such] right was clearly established at the time of the alleged misconduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam) (internal quotation marks omitted). We may decide for ourselves which step of the analysis to undertake first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Failing at either one will negate Hamby's eligibility to recover damages.

A

We take up the "clearly established" prong of the qualified-immunity analysis first. The Supreme Court has repeatedly emphasized that, to determine whether a given right was "clearly established" at the relevant time, the key question is whether the defendants should have known that their specific actions were unconstitutional given the specific facts under review. We flesh out this standard at some length, in no small part because our circuit has been repeatedly chastised for conducting the clearly established inquiry at too high a level of generality. *See, e.g.*, *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775–76 (2015) ("We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011))).

1

"To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that *what he is doing* violates that right." *Taylor*, 135 S. Ct. at 2044 (emphasis added) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). Although a plaintiff need not find "a case directly on point, . . . existing precedent must have placed the . . . constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083. That is, existing precedent must have "placed beyond debate the unconstitutionality of" the officials' actions, as those actions unfolded in the specific context of the case at hand. *Taylor*, 135 S. Ct. at 2044. Hence, a plaintiff must prove that "precedent on the books" at the time the officials acted "would have made clear to

[them] that [their actions] violated the Constitution." *Id.* at 2045.

As the Supreme Court again stressed recently, "[t]he dispositive question is 'whether the violative nature of [the defendants'] *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *al-Kidd*, 131 S. Ct. at 2084). Moreover, "[t]his inquiry 'must be undertaken in light of the *specific context* of the case, not as a broad general proposition.'" *Id.* (emphasis added) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

In a nutshell, according to the Supreme Court, state officials are entitled to qualified immunity so long as "none of our precedents 'squarely governs' the facts here," meaning that "we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have . . . acted as [the officials] did." *Id.* at 310 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).[3]

---

[3] In recent years, the Supreme Court has repeatedly stated that the "clearly established" inquiry demands that courts train their attention on the particular facts under review. *See, e.g.*, *Sheehan*, 135 S. Ct. at 1777 (holding that "qualified immunity necessarily applies here because . . . competent officers could have believed" their actions were constitutional); *id.* at 1778 ("Considering the specific situation confronting [the officers], they had sufficient reason to believe that their conduct was justified."); *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) ("[W]e address the key question: Should it have been clear to the agents that the security perimeter they established violated the First Amendment?").

2

Before applying the above principles to Hamby's case, we must emphasize that the fact-specific, highly contextualized nature of the inquiry does not depend on which particular constitutional right a given plaintiff claims the officials have violated.

In particular, Hamby—drawing on some recent statements from our court—suggests that the qualified-immunity inquiry in Eighth Amendment cases differs from the inquiry in other types of cases, such as those involving excessive force, where analogies to prior cases supposedly play a stronger role.

That proposition is demonstrably untrue. Not only has the Supreme Court never suggested any such distinction, but several cases affirmatively repudiate it. Indeed, *Taylor v. Barkes* was an Eighth Amendment case—just like the present one—in which an inmate's estate alleged that prison officials were deliberately indifferent to the inmate's serious medical needs. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 314 (3d Cir. 2014), *rev'd sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (per curiam). Specifically, the estate argued that the prison officials violated the Eighth Amendment by failing to implement adequate suicide-prevention protocols. *Taylor*, 135 S. Ct. at 2044. Reversing the Third Circuit, the Supreme Court granted the officials qualified immunity, citing Fourth Amendment cases and following the exact same analysis applicable in that context. That is, the Court surveyed "the weight of . . . authority [existing] at the time of [the inmate's] death," and granted qualified immunity because no cases "placed beyond debate the unconstitutionality of the Institution's procedures, as implemented by the medical

contractor," as no prior cases clearly "specif[ied] what procedures would suffice" under the Eighth Amendment. *Id.* at 2044–45. Precisely because analogies to prior cases failed, the Court concluded that "no precedent on the books in November 2004 would have made clear to petitioners that they were overseeing a system that violated the Constitution. Because, at the very least, petitioners were not contravening clearly established law, they are entitled to qualified immunity." *Id.* at 2045.

Likewise, *Wood v. Moss* and *Reichle v. Howards* were First Amendment cases rather than Fourth Amendment ones. *Wood*, 134 S. Ct. at 2061; *Reichle*, 132 S. Ct. at 2092–93. And yet the Supreme Court's analysis proceeded along the same lines. These cases make clear that the particular right at issue in no way changes the fact-specific, highly contextualized nature of the "clearly established" analysis. *See Wood*, 134 S. Ct. at 2067; *Reichle*, 132 S. Ct. at 2096 & n.6.

## B

Given the foregoing doctrine, the question in this case must be: viewing the evidence in the light most favorable to Hamby, was it "beyond debate," at the time the prison officials acted, that their conduct violated the Constitution? If the answer is no—if the officials' actions did not *clearly* violate Hamby's rights under the Eighth Amendment—then the officials are entitled to qualified immunity, and summary judgment must be entered in their favor.

1

Hamby's theory of the case is that the non-surgical treatment prescribed by the prison officials fell short of what the Eighth Amendment requires. On the merits, Eighth Amendment doctrine makes clear that "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc). Rather, "[t]o show deliberate indifference, the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" *Id.* at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

For purposes of determining qualified immunity, therefore, we must ask the narrower question: viewing the evidence most favorably to Hamby, and given existing case law at that time, was it "beyond debate" that the prison officials pursued a medically unreasonable course of treatment by declining to refer Hamby for a surgical evaluation? *Cf. Mullenix*, 136 S. Ct. at 309 (holding that where the merits question asks if the officials acted reasonably, the qualified-immunity question "is whether existing precedent placed the conclusion that [the officials]

acted unreasonably in these circumstances 'beyond debate'" (quoting *al-Kidd*, 131 S. Ct. at 2083)).

2

Here, the answer is no, even if we assume that each of the officials Hamby sued was aware of his chronic pain.[4]  *See Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994).  That is, in light of existing precedent and the specific facts of Hamby's case, it is at least debatable that the officials complied with the Eighth Amendment, because—to the extent they played any role in the decision to deny Hamby surgery for his umbilical hernia—the record makes clear that they did so based on legitimate medical opinions that have often been held reasonable under the Eighth Amendment.

a

Dr. Hammond testified that in his medical opinion, hernias "typically" merit surgical treatment, but "[s]ometimes a condition can be monitored clinically without treatment." "Medical evidence and experience," he explained, "show that some reducible hernias can be clinically monitored and surgical repair is not required.  Under those circumstances, monitoring or 'watchful waiting' is medically appropriate. Watchful waiting is . . . medically acceptable for clinical management of both inguinal and umbilical hernias in many cases."  Such monitoring can be done "more or less intensively," and will often involve behavior changes on the part of the patient and repeated examinations by medical

---

[4] We note that Secretary Warner cannot be held vicariously liable under § 1983 for any violations committed by prison medical personnel.  *E.g.*, *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

personnel. Accordingly, Dr. Hammond testified, prison policy provides that surgery for reducible—otherwise known as non-incarcerated—hernias is deemed to be only "potentially medically necessary," and surgery in such cases must be specially approved on a case-by-case basis.

Dr. Hammond declared that the CRC turned down Hamby's request for surgery because "there was no evidence that his hernia was incarcerated and [because] he was managing his activities of daily living." In addition, Dr. Hammond declared that at the time this litigation began, Hamby had "not presented symptoms of intractable pain," and that, in Dr. Hammond's judgment, forgoing surgery at that time would "not present Mr. Hamby with risk of serious medical harm. While his umbilical hernia may cause him discomfort or pain from time-to-time," Dr. Hammond concluded, it was capable of being "managed without surgical intervention."

b

Similarly, Dr. Smith testified that, in her opinion, Hamby's requested surgical evaluation was "not medically necessary" because "his hernia was not incarcerated and did not impair his daily activities."

In addition, as recounted above, Hamby was not merely being monitored; he was treated with a hernia belt and a regimen of medications, and was taught how to alleviate pain through behavioral changes.

c

Hamby's expert, Dr. Bradley Roter, agreed with Drs. Hammond and Smith that "watchful waiting may be a reasonable alternative to surgery for patients who present with umbilical hernias that are not incarcerated (i.e., reducible) and that are not causing pain or other significant symptoms." But "[m]y personal practice," he declared, "is to recommend surgical evaluation to almost all of my patients who present with umbilical hernias." "In my opinion," he went on, "the benefits of surgical repair outweigh the relatively small risks associated with the procedure." In Hamby's case, Dr. Roter concluded, "[t]he standard of care" would be "to refer [him] for a surgical consultation."

3

Crucially for purposes of determining qualified immunity, an examination of existing case law demonstrates that the non-surgical treatment the defendants selected is not indisputably unconstitutional in circumstances like these. In fact, there are many cases, both reported and unreported, holding that prison medical personnel did not violate the Eighth Amendment even though they denied surgical treatment to an inmate with a reducible hernia comparable to Hamby's. *See, e.g.*, *Johnson v. Doughty*, 433 F.3d 1001, 1003–04, 1013–14 (7th Cir. 2006) (holding prison medical personnel did not act with deliberate indifference when they opted for non-surgical treatment—a hernia belt, Tylenol, Metamucil, and monitoring—in response to prisoner's reducible inguinal hernia); *Brown v. Beard*, 445 F. App'x 453, 455–56 (3rd Cir. 2011) (per curiam) (holding prison medical personnel did not violate Eighth Amendment when they refused to authorize surgery for prisoner's reducible

hernia, instead prescribing pain medication and abdominal belt, plus monitoring, and despite another doctor's opinion that surgery was warranted); *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008) (per curiam) (similar); *Anderson v. Bales*, No. 12-2244, 2013 WL 1278122, at *1 (7th Cir. Mar. 29, 2013) (similar); *Rossi v. Nev. Dep't of Corrections*, 390 F. App'x 719, 720 (9th Cir. 2010) (similar).

These cases—combined with a lack of overwhelming contrary authority—are dispositive for purposes of determining qualified immunity, because they demonstrate that existing precedent does not "place[] beyond debate the unconstitutionality of" the course of non-surgical treatment pursued by the prison officials in Hamby's case. *Taylor*, 135 S. Ct. at 2044; *see also Sheehan*, 135 S. Ct. at 1778 ("[T]o the extent that a 'robust consensus of cases of persuasive authority' could itself clearly establish the federal right respondent alleges, no such consensus exists here." (quoting *al-Kidd*, 131 S. Ct. at 2084) (citation omitted)). At worst, the evidence in the record shows a difference of medical opinion amounting to possible negligence on the part of Drs. Hammond and Smith. As such, even when the evidence is viewed in the light most favorable to Hamby, "we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have . . . acted as [the officials here] did." *Mullenix*, 136 S. Ct. at 310 (quoting *Malley*, 475 U.S. at 341). For that reason alone, they did not violate a "clearly established" right, and so they must be entitled to qualified immunity.

## C

Hamby raises two basic objections to such analysis. We are not persuaded.

1

First, he insists that his "clearly established" right should be defined at a higher level of generality, namely, as the right not to be treated "with deliberate indifference to a serious medical need," a constitutional right "that has been clearly established for years." Likewise, he argues that a right to specific treatment—in this case, hernia repair surgery—need not be clearly established by case law.

Hamby's argument misunderstands the sort of clarity a plaintiff must demonstrate in order to overcome a defense of qualified immunity. For starters, defining the relevant right as simply the right to be free from deliberate indifference "is far too general a proposition to control this case." *Sheehan*, 135 S. Ct. at 1775. To proceed in that manner is to neglect the dispositive question: whether these officials, on these facts, should have known that what they did violated the Eighth Amendment. In short, Hamby would have us repeat the same error the Supreme Court has time and again felt compelled to correct.

Of course, it is true (as far as it goes) that a plaintiff need not find a case with identical facts in order to survive a defense of qualified immunity; obviously, one can imagine a situation where the officials' conduct is so egregious that no one would defend it, even if there were no prior holding directly on point. *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." (internal quotation marks omitted)). But it should be equally obvious that the farther afield existing precedent lies from the case

under review, the more likely it will be that the officials' acts will fall within that vast zone of conduct that is perhaps regrettable but is at least arguably constitutional. So long as even that much can be said for the officials, they are entitled to qualified immunity.

Such is the case here. Even when the facts are viewed most favorably to Hamby, they demonstrate that the prison officials acted on a bona fide medical opinion, and opted for a course of treatment held to be constitutional on numerous prior occasions. "Considering the specific situation confronting" them, "they had sufficient reason to believe that their conduct was justified." *Sheehan*, 135 S. Ct. at 1778. That is enough to shield them from damages liability.

2

Second, Hamby cites four district court opinions which, he claims, "denied qualified immunity to prison officials who refused to provide surgical treatment to patients with reducible hernias." These citations do not establish that the prison officials violated any clearly established law.

Of course, "district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity." *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n.7 (2011). Even if district court decisions *could* clearly establish the law for purposes of qualified immunity, the cases on which Hamby relies cannot do the work he asks of them.

a

One of the cases Hamby cites denied qualified immunity only after committing the same analytical error that Hamby would have us repeat. *McCabe v. Gibbons*, No. 3:09-cv-00244-LRH-WGC, 2013 WL 5437645, at \*31 (D. Nev. Sept. 27, 2013) (holding, without further analysis, that "it was clearly established during the relevant time frame that denial, delay of, or interference with medical care of a prisoner constitutes an Eighth Amendment violation if it amounts to deliberate indifference to a serious medical need").

b

The remaining cases are distinguishable on their facts. *E.g.*, *Woodroffe v. Oregon Dep't of Corr.*, No. CV 05-977-MO, 2008 WL 2234583, at \*6 (D. Or. May 27, 2008) (denying qualified immunity on motion for summary judgment where prisoner put in sufficient evidence to create a factual dispute as to whether prison had "a *de facto* policy of never, or almost never, paying for elective surgery to repair a hernia"); *Delker v. Maass*, 843 F. Supp. 1390, 1397–98 (D. Or. 1994) (same); *Torrez v. Richter*, No. CV-03-770-HU, 2004 WL 1253374, at \*9 (D. Or. June 7, 2004) *findings and recommendation adopted*, 2004 WL 2397201 (D. Or. Oct. 25, 2004) (denying qualified immunity where evidence showed "the hernia belt originally prescribed was not working, 2) [prisoner] was in nearly constant and increasing pain . . . , 3) the pain radiated into his leg and caused him difficulty with walking and climbing stairs, 4) he was required to push the hernia back into place several times a day, and 5) the hernia had grown larger over time").

In sum, even when the facts are viewed most favorably to Hamby, it is at least debatable that the prison officials here complied with the Eighth Amendment. They are therefore entitled to qualified immunity.[5]

IV

Hamby also claims that the district court erred in denying injunctive relief relating to his potential inguinal hernia. This claim fails.

In his motion for summary judgment, Hamby expressly stated that "the pain related to [his] possible inguinal hernia has subsided" and "is currently at a level he can tolerate." Hamby acknowledges that he has received treatment for the inguinal hernia. Hamby's medical expert, Dr. Roter, explained in general terms that "[s]ometimes inguinal hernias cause pain; sometimes they do not." Hamby has pointed to no evidence suggesting that the prison officials' decision to forgo surgery at this time is "'medically unacceptable under the circumstances' and that the [officials] 'chose this course in conscious disregard of an excessive risk to [Hamby's] health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson*, 90 F.3d at 332). At worst, we have here another difference of bona fide

---

[5] Hamby also argues that Secretary Warner was deliberately indifferent because he "ignor[ed] systemic deficiencies in [the Department of Corrections's] healthcare approval process." The only evidence Hamby cites are three lawsuits other inmates had filed in the past, at least one of which was subsequently dismissed, *see Francis v. Hammond*, No. C12-6023-RBL-JRC, 2015 WL 1650309 (W.D. Wash. Apr. 14, 2015). These arguments are totally insubstantial and devoid of all context. They do not come close to showing that Secretary Warner oversaw or implemented a system that indisputably flouted the Eighth Amendment.

medical opinion. There are no material facts in dispute, and therefore the district court properly denied injunctive relief.

V

The judgment of the district court is **AFFIRMED.**

GOULD, Circuit Judge, concurring in part and dissenting in part:

I concur only in the result reached by the majority in Part IV. I respectfully dissent from the rest of the majority's opinion. We have long recognized: "It is settled law that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). And it has been clearly established in this Circuit for decades that prison officials are deliberately indifferent when they "deny, delay, or intentionally interfere with medical treatment." *Id.* (quoting *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992)). This principle makes good sense when we recognize that a prisoner is totally at the mercy of prison officials for medical care. If the prison does not act responsibly to correct a medical problem, the prisoner has nowhere else to go. As the Second Circuit explained persuasively in *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003): "We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain."

I do not disagree with the majority that the concept of deliberate indifference requires more than simple negligence

and a difference of medical opinion. *See, e.g.*, *Toguchi v. Chung*, 391 F.3d 1051, 1057–61 (9th Cir. 2004). However, a difference of medical opinion does not preclude a finding of deliberate indifference. *See, e.g.*, *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). Here, Fleet Hamby reported pain from an umbilical hernia over the course of several years, saw medical staff more than a dozen times, and filed numerous "kites" and grievances in a futile attempt to have his pain effectively addressed. But he could not get out of the starting gate because the Care Review Committee determined—likely without reviewing Hamby's medical files, as this was the Committee's general policy[1]—that an umbilical hernia that was not incarcerated could be dealt with through "watchful waiting" and did not require surgery. This was despite the fact that Dr. Hammond admitted there was a "good chance" that surgery would alleviate Hamby's pain. The Committee's decision to deny the surgery may have comported with the prison system's internal policies and contributed to reducing the costs of medical care for prisoners. However, it is not a foregone conclusion that prison officials' actions here pursuant to prison policies complied with the Eighth Amendment. *See Colwell v. Bannister*, 763 F.3d 1060, 1063 (9th Cir. 2014) ("the blanket, categorical denial of medically

---

[1] Dr. Hammond testified in his deposition that the Care Review Committee receives an Excel spreadsheet before meeting, which includes information about each case (including birth date, inmate number, and "a synopsis of the case and a statement of the proposed interventions."). When asked if the Committee is provided with the inmates' medical records, he replied, "Not—well, typically not. It's simply a synopsis, although it's also possible with the current system to submit photographs and sometimes there are photocopies of things like diagnostic reports."

indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference").

I do not say that Hamby showed deliberate indifference as a matter of law and could receive summary relief himself. But his evidence was sufficient to raise a genuine issue of material fact on whether "the course of treatment the doctors chose was medically unacceptable under the circumstances," and whether they "chose this course in conscious disregard of an excessive risk" to Hamby's health. *Jackson*, 90 F.3d at 332. This case should have gone to a jury as the trier of fact, with the guidance of correct jury instructions on deliberate indifference. It should not have been resolved by summary judgment of the district court. *See Snow*, 681 F.3d at 987. Nor should that summary judgment be affirmed by us. And so I dissent in the hope that a future court may correct the majority's error.