**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LEWIS STEWART,
            *Plaintiff-Appellee*,

v.

ROMEO ARANAS; JAMES COX;
FRANCISCO M. SANCHEZ; BRIAN E.
WILLIAMS,
            *Defendants-Appellants*,

and

CHERYL BURSON; S.L. CLARK;
JAMES E. DZURENDA; ANGIE JONES;
SEAN SU; STATE OF NEVADA,
            *Defendants*.

No. 20-15586

D.C. No.
3:17-cv-00132-
MMD-CLB

OPINION

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted August 10, 2021
San Francisco, California

Filed May 4, 2022

Before:  Eugene E. Siler,[*] Morgan Christen, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Siler;
Concurrence by Judge Christen

## SUMMARY[**]

### Prisoner Civil Rights

The panel affirmed the district court's order denying qualified immunity to prison officials in an action brought pursuant to 42 U.S.C. § 1983 alleging that defendants were deliberately indifferent to plaintiff's medical needs when, despite his numerous complaints over a period of years and a visibly deteriorating condition, they ignored his enlarged prostate.

The panel determined that only examination of the second prong of the qualified immunity analysis was necessary—whether the right was clearly established at the time of the violation—because doing so would not hamper the development of precedent and both parties expressly acknowledged that this case turned on the second prong.

The panel stated it was clearly established at the time of plaintiff's treatment that prison officials violate the

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

constitution when they choose a medically unacceptable course of treatment for the circumstances and a reasonable jury could find that the prison officials here did just that. At some point "wait and see" becomes deny and delay. Plaintiff's condition sharply deteriorated during his last few years at Southern Desert Correctional Center. Yet prison officials never deviated from their "wait and see" treatment plan. As a result, plaintiff alleged he developed stage 3 kidney disease, erectile dysfunction due to the prostate tissue cavity, urine build up, and some pain from a prostatectomy. Plaintiff alleged more than mere disagreement with a medical treatment plan and there was evidence that he suffered from intractable pain over an approximately three-year period that was interfering with his daily activities.

Concurring in the judgment, Judge Christen wrote separately for two reasons: First, the record did not support the majority's factual predicate. The majority relied on the magistrate judge's recommendation to compile a factual history, but Judge Christen could not find support in the record for the recommendation's recitation of the background facts. Second, Judge Christen clarified that she concurred in the result reached by the majority only because defendants did not appeal the first prong of the qualified immunity analysis and left unchallenged the magistrate judge's recommendation that a genuine issue existed regarding whether defendants acted with deliberate indifference. Judge Christen agreed with the majority that a reasonable official with subjective awareness of a factual predicate akin to the one reflected in the magistrate judge's report and recommendation would have violated plaintiff's constitutional rights by continuing a treatment plan of "watchful waiting" after plaintiff's condition became acute.

**COUNSEL**

Frank A. Toddre II (argued), Senior Deputy Attorney General; D. Randall Gilmer, Chief Deputy Attorney General; Aaron D. Ford, Attorney General; Office of the Attorney General, Las Vegas, Nevada; for Defendants-Appellants.

Andrew M. Lagomarsino (argued), Lagomarsino Law, Henderson, Nevada, for Plaintiff-Appellee.

**OPINION**

SILER, Circuit Judge:

Mere disagreement with a medical treatment plan is not deliberate indifference. But continuation of the same treatment in the face of obvious failure is. Lewis Stewart alleges just that: prison officials, despite numerous complaints over a period of years and a visibly deteriorating condition, ignored his enlarged prostate. As a result, he claims that he has suffered irreversible injuries. Because it was clearly established at the time of Stewart's treatment that prison officials violate the constitution when they choose a medically unacceptable course of treatment for the circumstances and a reasonable jury could find that the prison officials here did just that, we affirm the district court.

I

While housed at the Southern Desert Correctional Center (SDCC), Stewart began to feel "discomfort in his lower abdominal and back area." And so came the first of numerous written requests to the prison staff for care. After a long delay, Stewart was seen by Romeo Aranas and

Francisco Sanchez (among others).  He complained to them "that he was having difficulties urinating, that he had to sit on the toilet to urinate, and that his short and irregular urine flows were very painful."  Indeed, his pain was "so severe that he had to curl into a fetal position to help alleviate the pain."  In response, Aranas and Sanchez took Stewart's vitals and prodded both his abdomen and his kidney area. Stewart was then given some generic medication and sent on his way.

But neither the pain nor the inability to urinate stopped. And by sometime between 2013 and 2015, Stewart's urethra, testicles, and abdominal areas grew inflamed.  More complaints to Aranas and Sanchez followed but nothing changed.

Subsequently in 2015, Stewart was transferred to Warm Springs Correctional Center (WSCC).  The ride to his new facility lasted eight uncomfortable hours and he "arrived pale, flushed, sweating and unbalanced."  Upon first look, the WSCC medical staff initiated "immediate emergency care."

Dr. Marsha Johns examined Stewart's abdominal cavity and ordered an immediate catheterization "to drain Stewart's urinary retention."  That process drained more than six liters or fourteen pounds of fluid from his bladder and urinary system.  Stewart was next sent to the Regional Medical Facility at the Northern Nevada Correctional Facility (NNCF).  There, he was seen by three urologists, including two outside specialists, and underwent surgery for a transurethral resection of the prostate.  Despite his treatment at SDCC and NNCF, Stewart now has several long-term issues, including stage 3 kidney disease, erectile dysfunction due to the prostate tissue cavity, urine build up, and some pain from the prostatectomy.

Afterwards, Stewart filed grievances with SDCC related to his care.  Those grievances were denied.  Stewart then brought multiple claims under Section 1983 against numerous prison officials.  After the district court screened Stewart's complaint, he was left with two claims of deliberate indifference to serious medical needs.  The remaining officials claimed that they were entitled to qualified immunity and moved for summary judgment.  The district court disagreed.

## II

We have jurisdiction under 28 U.S.C. § 1291 and review whether the prison officials are entitled to qualified immunity de novo.  *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019).

## III

Stewart alleges that the prison officials acted with "deliberate indifference" to his "serious medical needs." Those same officials respond that they are entitled to qualified immunity.  So, to prevail, Stewart must show that: (1) the officials violated a constitutional right, and (2) the right was clearly established at the time of the violation. *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016). Stewart can succeed under *Hamby*.

*Constitutional right*. Although *Hamby* puts forward a two-prong test that first asks whether officials violated a constitutional right, we need not analyze both prongs. Both parties expressly acknowledge that this case turns on the second prong of *Hamby*, not the first, so only examination of the second is necessary. It is recognized that a qualified immunity analysis may be confined to only the second prong of *Hamby* when doing so will not hamper the development

of precedent. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019). Such is the case here.

*Clearly established*. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (per curiam). A case directly on point is unnecessary but the constitutional question must be "beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011).

Here, the prison officials claim that no clearly established law barred their "wait and see" treatment plan for Stewart's enlarged prostate. It is true that we have not found a case on all fours with the factual context presented here. But it has been established that "deny[ing], delay[ing], or intentionally interfer[ing] with medical treatment" can violate the constitution. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). At some point "wait and see" becomes deny and delay. Stewart's condition sharply deteriorated during his last few years at SDCC. Yet prison officials never deviated from their "wait and see" treatment plan. As a result, Stewart alleges he developed stage 3 kidney disease, erectile dysfunction due to the prostate tissue cavity, urine build up, and some pain from the prostatectomy. A delay in treatment can violate the constitution if it results in injury. *See Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985) (requiring that any treatment delays cause harm).

Besides, the prison officials knew that they violate the constitution when they persist in a treatment known to be ineffective. *See Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012). Most objective evidence pointed toward the long-term failure of the "wait and see" treatment plan. *See*

*Sandoval v. Cnty. Of San Diego*, 985 F.3d 657, 680 (9th Cir. 2021).

*Hamby* does not dictate a different result. *See* 821 F.3d at 1094. To the contrary, *Hamby* simply reiterates two rules for medical deliberate indifference claims: (1) we must consider the most similar cases, and (2) mere disagreement with a treatment plan does not constitute deliberate indifference. *Id*. And Stewart alleges more than mere disagreement. Unlike *Hamby*, there was not an agreement by all the doctors (including *Hamby*'s expert) that watchful waiting was reasonable. *See Hamby*, 821 F.3d at 1093–94. And, unlike *Hamby*, there is evidence that Stewart was suffering from intractable pain over an approximately three-year period that was interfering with his daily activities. *Id.* Therefore, we conclude that the prison officials are not entitled to qualified immunity.

**AFFIRMED**.

CHRISTEN, Circuit Judge, concurring in the judgment:

I concur with my colleagues' decision to affirm the district court's denial of qualified immunity, but write separately for two reasons: (1) by my read, the record does not support the majority's factual predicate; and (2) to clarify that I concur in the result reached by the majority only because defendants did not appeal the first prong of the qualified immunity analysis.

Lewis Stewart was treated for an enlarged prostate for several years while he was in the custody of the Nevada Department of Corrections ("NDOC"). His complaint's allegations are short on details, but it is clear that it was

between 2013 and 2015 that his symptoms began to worsen. During this period, records confirm that NDOC staff examined Stewart several times and tried various treatments. The records also show that NDOC discontinued some treatment at Stewart's request.

Stewart was transferred from Southern Desert Correctional Center ("SDCC") to Warm Springs Correctional Center ("WSCC") in August of 2015 via an eight-hour bus ride. His complaint asserts that, upon his arrival at WSCC, he immediately complained of acute pain, told the personnel at WSCC that he could not urinate, and that more than six liters of fluid were drained from his system.[1] Stewart's complaint also alleges that upon his arrival, a provider at WSCC exclaimed, "How long has he been like this?" But neither Stewart's complaint nor his opposition to defendants' summary judgment motion ever answered the provider's question. Instead, we are left to guess how long Stewart's condition was acute and he offers only the conclusory assertion that the defendants were subjectively aware of, and deliberately indifferent to, his serious medical condition. A separate problem is presented by the fact that nothing in the record differentiates between the various defendants' actions. This omission is particularly significant because some of the defendants were not care providers.

Stewart's complaint alleges that he complained about urination problems and associated pain for years while

---

[1] Stewart does not identify the date of his transfer, nor do the records match his allegation that he was catheterized immediately upon arrival at WSCC, but the records are unclear and we view contested facts in the light most favorable to Stewart in this interlocutory appeal. *See Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014) ("[W]e view the facts in the light most favorable to the nonmoving party.").

incarcerated at SDCC, and that he did not receive adequate treatment. But the medical records do not support a claim of deliberate indifference. Instead, the records show that between February 20, 2013 and October 15, 2014, Stewart was taking Flomax, he thought his symptoms were improved with the drug, and he wanted to continue taking it. In December of 2014, a medical note shows Stewart was "still on Lasix," a diuretic, that he was urinating more frequently, and that he wanted to discontinue taking this medication. In May, Stewart failed to appear for a scheduled medical appointment. He attended two appointments in July, but the notes from these visits are indecipherable. Stewart remained at SDCC for the first eight months of 2015 and then transferred to WSCC. At some point during that eight-month period, his prostate condition became much more serious.

Stewart's complaint alleges that defendants Aranas, Clark, Jones, Sanchez, and Su saw him during the operative time frame but did not provide treatment. The claims against Clark, Jones and Su were dismissed for failure of service. The complaint also alleges that Stewart complained about his medical condition to defendants Burson, Cox, and Williams and that they did not do anything, but the claims against Burson were also dismissed due to failure of service.[2] James Cox, the Director of the Nevada Department of Corrections, and Brian Williams, the Warden at the Southern Desert Correctional Center, remain as defendants. Stewart's complaint does not explain whether he

---

[2] The district court dismissed plaintiff's claims against Burson, Jones, Su, and Clark because plaintiff did not provide proof of service. Only Aranas, Sanchez, Cox, and Williams remain as defendants.

communicated with these defendants in 2015, or what he told them about his medical condition.

The majority relies on the R&R to compile a factual history, but I cannot find support in the record for the R&R's recitation of the background facts. Citing the R&R, my colleagues describe Stewart's "numerous written requests to the prison staff for care" and a "long delay" before Stewart received attention when his symptoms first began in 2002. The R&R also asserts that "Stewart continued to complain to . . . defendants about the severity of his pains and the inability to urinate regularly without discomfort" in the following months, and that "[b]etween 2014 and 2015, Stewart complained to defendants through kites and visits about his urination problems and slow, short flows." Despite the description in the R&R, the scant records before us do not show that Stewart put defendants on notice that his condition had worsened, and the other allegations in Stewart's complaint do not meet the standard established by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Even so, defendants did not object to the magistrate judge's recommendation that a genuine issue exists regarding whether defendants acted with deliberate indifference. Defendants only objected to the magistrate judge's recommendation that existing precedent put defendants on notice that their treatment of Stewart may have been unconstitutional, and they only appealed the "clearly established" prong of the qualified immunity analysis. "We review only issues which are argued specifically and distinctly in a party's opening brief." *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). I agree with the majority that a reasonable official with subjective awareness of a factual predicate akin to the one reflected in the R&R would have violated Stewart's constitutional rights

by continuing a treatment plan of "watchful waiting" after Stewart's condition became acute. And because defendants left unchallenged the suggestion that Stewart adequately alleged the defendants acted with deliberate indifference, I join the majority in affirming the district court's denial of qualified immunity.