NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 28 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KELVIN X. SINGLETON,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>S. GATES, Chief of Health Care Appeal, in individual and official capacity; M. LEWIS, Chief Physician and Surgeon, in individual and official capacity; B. RAMOS, Chief Medical Executive, in individual and official capacity; A. GALSTAIN, Chief Executive Officer, in individual and official capacity; M. NAWAZ, Primary Care Physician, in individual and official capacity,<br><br>Defendants - Appellees. | No. 25-743<br><br>D.C. No.<br>2:19-cv-08908-RGK-JC<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 21, 2026
San Francisco, California

Before: S.R. THOMAS, CHRISTEN, and FORREST, Circuit Judges;
Dissent by Judge FORREST.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Kelvin X. Singleton is a California state prisoner who has suffered from glaucoma in both eyes since 1995 and lost partial vision in one eye as a result of an eye stroke. Singleton uses several prescription eye drops to reduce the pressure in his eyes. The eye drops cause light sensitivity as a side effect. This condition is painful on its own, and it also causes Singleton to suffer headaches and blurry vision. Singleton used prescription transitional lenses for several years to manage these symptoms.

In 2018, Singleton broke his transitional lenses while working at his prison job. Without his glasses, he was unable to exercise outdoors or read by light and experienced headaches and spots in his vision. Shortly thereafter, Singleton was transferred to California State Prison-Los Angeles County (CSP-LAC). At multiple medical appointments, Singleton requested that his transitional glasses be replaced and offered to pay for the replacement lenses. Prison staff, including the defendants, repeatedly denied his requests. According to Singleton, they cited a state-wide prison policy that allows transitional lenses for only one eye condition, which Singleton does not have. Singleton filed this lawsuit under 42 U.S.C. § 1983 alleging that the defendants violated his Eighth Amendment rights. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse the district court's order

25-743

granting summary judgment for defendants S. Gates, M. Lewis, B. Ramos, and M. Nawaz.[1]

We review de novo a district court order granting summary judgment and construe pro se filings liberally. *Weldeyohannes v. Washington*, 162 F.4th 972, 976 (9th Cir. 2025). "We must view the evidence in the light most favorable to the non-moving party, and then ask whether there is any 'genuine dispute as to any material fact' under the governing substantive law." *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103– 05 (1976)). "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Id.* (quoting *Estelle*, 429 U.S. at 104). This includes both an objective showing "that the deprivation was serious enough to constitute cruel and unusual

---

[1] Singleton does not appeal the part of the district court's order that granted summary judgment on his claims pertaining to back pain, nor does he appeal the entry of summary judgment in favor of defendant A. Galstian. We therefore affirm summary judgment on those claims. The remaining defendants are sued in their individual capacities, save defendant Gates who continues to be named in his official and individual capacities.

punishment" and a subjective showing of deliberate indifference. *Id*. (citation modified).

To meet the objective element, Singleton must show the existence of a "serious medical need." *Id.* A medical need is serious if it "significantly affects an individual's daily activities" or results in "chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (citation modified), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). The defendants do not dispute that Singleton's photophobia qualifies as a serious medical need, and this element is supported by evidence that Singleton suffered "chronic and substantial pain" from his unmitigated light sensitivity. *Colwell*, 763 F.3d at 1066 (citation modified).

The subjective prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). We have explained that "a difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Hamby*, 821 F.3d at 1092 (citation modified). To establish deliberate indifference, "the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the

4                                                                    25-743

circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (citation modified).

The district court held that Singleton failed to satisfy the subjective prong because he did not demonstrate that transitional lenses were medically necessary or that the failure to provide them was medically unacceptable. But Singleton presented evidence that transitional lenses were medically necessary. Singleton's declaration asserted that specialists have prescribed transitional lenses for him "since the mid 1990s." He also offered an expert report prepared for prior litigation with California State Prison defendants. The expert report notes that in 2010 a California State Prison ophthalmologist prescribed Singleton glasses "with transition [lenses] due to [the] *medical necessity* of light photophobia." Singleton also presented a prescription for glasses with transitional lenses dated June 2017. Finally, as recently as March 2020, a prison ophthalmologist examined Singleton and again prescribed transitional lenses. The latter prescription, alone, at least raises a factual question that defeats summary judgment because prison policy regarding the prescription of durable medical equipment requires that the equipment be medically necessary.

The district court concluded that this evidence demonstrated a "mere difference[] of opinions among medical professionals." A difference of medical opinions does not amount to deliberate indifference, but the denial of medical care

based on blind adherence to a blanket policy—rather than an individualized medical judgment—may give rise to a finding of deliberate indifference. *Colwell*, 763 F.3d at 1063 (explaining that the "blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference"); *see also Rosati v. Igbinoso*, 791 F.3d 1037, 1039–40 (9th Cir. 2015) (per curiam). The record includes evidence that defendant Dr. Nawaz, who was Singleton's primary care physician, and a CSP-LAC optometrist both informed Singleton that they could not prescribe transitional lenses because prison policy authorized such lenses only for a single qualifying eye condition, which Singleton does not have. Singleton alleges that the non-treating defendants, Lewis, Ramos and Gates, relied on the fact that Dr. Nawaz "ha[d] not documented a medical indication for transitional lenses" and the optometrist's note that transitional lenses were not "medically indicated" to deny Singleton's medical grievances.

The defendants offered no evidence directly contradicting Singleton's testimony that he was refused transitional lenses based solely on a rigid policy. The record contains no statements from Dr. Nawaz or the CSP-LAC optometrist disputing that they declined to prescribe transitional lenses based solely on policy rather than medical necessity. Instead, the defendants argue that Singleton's evidence is "self-serving" and uncorroborated. Those are weight and credibility

issues that we do not resolve at the summary judgment stage. *See Manley v. Rowley*, 847 F.3d 705, 710–11 (9th Cir. 2017); *SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007). The defendants also point to their retained expert who concluded that transitional lenses are not medically necessary after reviewing Singleton's medical records. But this expert did not examine or treat Singleton and the statement in his report that Singleton's medical records do not reflect "any history or prior complaints of . . . side effects" from his prescribed eye drops such as "sensitivity to bright light" or "irritation leading to light sensitivity," ignores Singleton's consistent statements that he suffers from light sensitivity that causes pain and headaches. It also ignores a prior expert report noting the same. Accordingly, there is a dispute of material fact over why the defendants denied Singleton transitional lenses: whether they did so because of a categorical policy or because they found the lenses medically unnecessary.[2]

Because a reasonable jury viewing the facts in the light most favorable to Singleton could conclude that the defendants ignored the recommendations of Singleton's treating ophthalmologists, and instead surrendered professional judgment to find transitional lenses not medically indicated based on a prison

---

[2] Notably, the defendants do not cite security or cost concerns with providing Singleton with transitional lenses. This is consistent with the record, which indicates that Singleton wore transitional lenses in prison for years without security issues and offered to pay for the replacement lenses himself.

policy, we reverse the district court's order granting summary judgment in favor of defendants Gates, Lewis, Ramos, and Nawaz.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

*Singleton v. Gates, et. al.*, No. 25-743
FORREST, Circuit Judge, dissenting:

It is well established that "[d]eliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted). And as the majority correctly explains, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Id.* (quoting *Snow*, 681 F.3d at 987). That is what is at issue here—a difference of medical opinion. As such, I disagree that Plaintiff Kelvin Singleton has demonstrated that there are triable issues regarding whether the treatment that he received for his photophobia was "medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (internal quotation marks and citation omitted), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1075 (9th Cir. 2014) (en banc).[1]

---

[1]Because Defendants do not dispute that Singleton's photophobia constitutes a "serious medical need," I do not address the objective element of the deliberate-indifference standard. *Id.* at 985.

1

While previous ophthalmologists who treated Singleton proscribed transitional lenses, the optometrist at the facility where Singleton was transferred to determined that transitional lenses were not medically necessary. This conclusion is supported by Defendants' expert witness, ophthalmologist Michael Reynard, M.D., who opined that the care Singleton received at the new facility was "medically appropriate" and "the applicable standard of care did not require prescription transitional lenses." That Dr. Reynard did not personally examine Singleton is not determinative—he reviewed Singleton's medical records and prison medical grievances, as well as Singleton's operative complaint, deposition testimony, and other evidence presented in the litigation. *Cf. Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (per curiam), as amended (Nov. 12, 1998) ("The fact[] that [the expert] did not personally examine [the plaintiff] . . . do[es] not render his otherwise admissible expert testimony inadmissible. . . . [The] opinions and inferences were based on his review of [the plaintiff]'s medical records, as well as his knowledge, experience, training[,] and education."). And Dr. Reynard did not err in stating that Singleton's "medical records do not reflect any history of prior complaints" of photophobia because it is correct that Singleton's medical records are silent regarding his complaints. Dr. Reynard's description of the medical records also does not indicate that he "ignore[d]" Singleton's photophobia. Maj. Op. at 7. Dr. Reynard's declaration makes clear that he was aware of Singleton's complaints

2

and history of photophobia, which were well-documented in the other evidence that he reviewed.

The majority's reliance on *Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014), and the prison policy that Singleton alleged was the reason that he was denied transitional lenses is also misplaced. In *Colwell*, it was "undisputed" that the prisoner was denied cataract surgery "solely because of an administrative policy" that dictated denial of such treatment so long as a prisoner had one good eye and that the prison followed this policy despite two treating "eye specialists"—an ophthalmologist and optometrist—recommending the surgery. *Id.* at 1068–69. There was no evidence in that case that any eye specialist had concluded that the surgery was not medically necessary or that the failure to provide the surgery was consistent with accepted medical practice. *See, e.g.*, *id.* at 1063 (discussing the opinion of the Nevada Department of Corrections' Medical Director "who [was] not an optometrist or ophthalmologist"); *id.* at 1076 (Bybee, J., dissenting) (discussing evidence from two non-eye specialist doctors). That is, our decision in *Colwell* was grounded in the fact that "the specialists' recommendations for surgery were overridden not because of conflicting medical opinions about the proper course of treatment, but because officials enforced the 'one eye only' policy." *Id.* at 1069.

Here, by contrast, two "eye specialists," *id.* at 1069, the prison optometrist who treated Singleton and Dr. Reynard, concluded that transitional lenses were not

3

medically necessary for Singleton. That Singleton's prior treating ophthalmologists recommended transitional lenses demonstrates a "difference of opinion . . . between medical professionals," not deliberate indifference. *Snow*, 681 F.3d at 988. This is particularly true where Singleton was consistently treated for his eye conditions. *See Hamby*, 821 F.3d at 1092 (explaining that to establish deliberate indifference the prisoner must demonstrate that the defendant chose the challenged course of medical treatment "in conscious disregard of an excessive risk to the plaintiff's health"). The record establishes neither that defendants refused or delayed treatment for Singleton nor that the treatment provided was medically unacceptable. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) ("Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." (internal quotation marks and citation omitted)).

For these reasons, I would affirm the district court, and I respectfully dissent.